## Byam v. Cook.

1. **Tax sale:** DEED: SALE EN MASSE. A tax deed showing a sale of several parcels of real estate *en masse* and not in parcels as the statute requires, is void.

2. —— ESTOPPEL. That the certificate of sale upon which such a deed was executed by the treasurer showed a sale in parcels does not estop the treasurer from denying the validity of such deed.

3. **Decree:** PRAYER OF PETITION. Relief will not be granted in the decree which was not asked in the petition.

*Appeal from Linn District Court.*

MONDAY, DECEMBER 10.

TAX DEED: SALE IN LUMP: PRACTICE, ETC.—The land in controversy was originally school land. The plaintiff claims the same by virtue of tax sales and a tax deed. The defendant holds a patent from the Governor.

The suit is in equity, the plaintiff setting forth the sale of the land in 1854 by the school fund commissioner to one David Ulsara, on a credit of ten years, various mesne assignments of this contract, and among others an assignment thereof, February 18, 1864, by one Blackmer (the then holder of the same) to the *defendant;* that some time after the defendant paid the clerk the balance ($114.80) due the school fund on the land    And on the

Byam v. Cook.

24th day of June, 1864, by virtue of such payment, the defendant obtained from the State a patent therefor. Such is an outline of the defendant's title.

The plaintiff sets out his title as being based upon a tax sale, November 7, 1860, of said land for the delinquent taxes of 1858 and 1859, to one Nathan M. Day; Day's decease; an assignment of Day's certificate by his administratrix, with the will annexed, to the plaintiff, and a tax deed, dated December 2d, 1863, by the treasurer (which office was, at that time held by the defendant Cook) to the plaintiff.

The plaintiff claims that this tax sale and deed give him the better right to said land, and that defendant holds the legal title (obtained as above) in trust for him; and the prayer is, that the defendant be decreed to convey the legal title to the plaintiff.

The answer admits the school fund contract, the assignment thereof to the defendant, his payment of the balance to the school fund and his procurement of the patent as alleged; but denies and contests the validity of the plaintiff's tax title.

The cause was referred to a referee, who found that the tax title was regular and that the plaintiff was entitled to a conveyance of the legal title from the defendant upon the payment of the amount ($114.80); the defendant paid the State the balance of the purchase-money due the school fund and certain taxes. This report was confirmed and a decree entered accordingly, from which the defendant appeals.

The facts more in detail are stated in the report of the referee, which will be found in the note.*

---

* I find from the evidence and admissions the following facts: First, That the lands in controversy, to wit, the north-east quarter of the north-west quarter of section sixteen (16), and the north-west quarter of said north-west quarter, and the south-east quarter of said north-west quarter, and the south-west quarter of said

*Thomas Corbett* for the plaintiff.

*Smyth & Young* for the defendant.

DILLON, J.—The plaintiff's tax deed recites "that whereas the following described real property, viz.: [*then*
1. TAX SALE: *follows a description of fourteen (14) different*
deed: sale en
masse. *and distinct parcels of land*] was subject to taxation for the years 1858 and 1859, and whereas the taxes assessed upon said real property for the years afore-

north-west quarter, all in township eighty-six (86), north of range seven (7), west and situate in Linn county, Iowa, were subject to taxation, for the years 1858 and 1859; and were in those years duly listed and assessed as required by law. That the taxes of said lands, for State, county, school and road purposes, were duly levied for the years 1858 and 1859, by the proper authorities as required by law; and that all the requirements of law were complied with for said years in the said listing, assessment and levy of said taxes. That the tax books were placed in the hands of the treasurer of Linn county, Iowa, by the clerk of the board of supervisors of said county for collection. That the taxes so levied and assessed on said lands as aforesaid, remained unpaid on the 7th day of November, 1860. That after said taxes became delinquent, to wit, November 7, 1860, the said treasurer, after having duly given notice, as required by law, and in the manner required by law, of the time when and place where said lands would be sold for the delinquent taxes then due upon the same, for the said years 1858 and 1859, sold said lands in tracts of forty acres for said delinquent taxes as follows:

The south-east quarter of said north-west quarter for $1.99, for the delinquent taxes, interest and costs for the year 1859, and for $1.18, for delinquent taxes, interest and costs for the year 1858.

The north-east quarter of said north-west quarter, for $1.99, for delinquent taxes, interest and costs for the year 1859, and for $1.18, for delinquent taxes, interest and costs for the year 1858.

The north-west quarter of said north-west quarter, for $1.99, for the delinquent taxes, interest and costs for the year 1859, and for $1.18, for the delinquent taxes, interest and costs for the year 1858.

The south-west quarter of said north-west quarter, for $1.99, for the delinquent taxes, interest and costs for the year 1859, and for $1.18, for the delinquent taxes, interest and costs for the year 1858. And that said several parcels of land were then and there, to wit, on the 7th day of November, 1860, at the court-house, in Marion, in said county, severally struck off and sold to N. M. Day, by said treasurer, he, the said N. M. Day, having severally offered and bid the amounts of delinquent taxes, interest and costs then due and unpaid on each of said tracts, and he being the person who offered to pay the amount due on each of said tracts, as offered for the smallest portion of the same. That said N. M. Day, paid said sums to said treasurer, and thereupon said treasurer executed to said Day, the certificate of purchase which is in evidence in this cause.

That said lands were never redeemed from said sale.

That said N. M. Day died about the 29th day of January, 1861, being a resident of the county at the time of his death, leaving as his only heirs at law his widow,

said, remained due and unpaid [*here follows recital as to time and place of sale*]. And, whereas, at the time and place aforesaid, N. M. Day, of, &c., having offered to pay the sum of sixty-eight dollars and ninety-one cents, being the whole amount of taxes, interest and costs then due and remaining unpaid on said property for *the whole* of the south-east quarter, &c. [*then follows a description of the fourteen different parcels, as before*]. And whereas Hannah M. Day, administratrix of the estate of N. M. Day, did, on the 5th day of November, A. D., 1863, duly assign all the right of estate of said Day to the certificate of the sale of the property as aforesaid, to E. C. Byam; and whereas three years have elapsed, &c.

Hannah M. Day, and a daughter, Emma M. Day; that he died leaving a will in which all his property, real and personal, after the payment of his debts, was devised and bequeathed to said widow and daughter (being the will in evidence in this cause).

That on the 5th day of November, 1863, said Hannah M. Day, who was then administratrix of the estate of the said N. M. Day, with said will annexed, executed to the plaintiff the assignment in evidence of said certificate of purchase.

That on the 10th day of August. 1864, the said Emma M. Day executed and acknowledged the quitclaim deed in evidence. whereby she conveyed to plaintiff all her right and interest in the lands in controversy.

That all the claims against the estate of the said N. M. Day have been paid.

That the defendant was treasurer of Linn county from the 1st Monday of January, 1860, to the 1st day of January, 1864.

That on the 2d day of December, 1863, the treasurer of Linn county duly executed to plaintiff. as the assignee of said N. M. Day, the tax deed in evidence; and on the same day duly acknowledged the same: and that on the 11th day of January, 1864, said deed was filed for record in the recorder's office of said county, and duly recorded.

I find also the following facts from the evidence and admissions contained in defendant's answer.

Second, that the land in controversy was school land, and that on the 11th day of September, 1854, the school fund commissioner of said county entered into a contract, as provided by law, for the sale of said land, with one David Ulsaver, and that various assignments were made of said contract; and that on the 18th day of February, 1864, the defendant became the assignee thereof. (A copy of said contract, and copies of the several assignments, are set forth in plaintiff's original petition.) That the assignment of said contract to plaintiff was not in fact fraudulent.

That on the 22d day of June, 1864, the defendant paid the treasurer of Linn county $114.89, the amount due on said contract, and received from the clerk of the District Court of said county a certificate of final payment, and on the 24th day

"Now, therefore, I, William Cook, treasurer of the county aforesaid, in consideration of said sum," &c., then follows the granting part of the deed, which bears date December 2, 1863. By comparing this deed with the one in *Boardman* v. *Bourne* (20 Iowa, 134), it will be seen that it is precisely like that, inasmuch as it shows on its face a sale *en masse* of several distinct parcels of land for a gross sum. We hold in this case, as we did in the one just referred to, that the deed is void upon its face.

This leaves the plaintiff without a deed, and therefore without any consummated tax title.

The referee, therefore, erred in finding that "the *tax deed* vested in the plaintiff the interest in said land" acquired by the vendee of the school fund.

The tax deed, standing alone, vested the plaintiff with no title whatever.

---

of June, 1864, received the patent in evidence from the Governor of the State of Iowa for said lands.

That on the 15th day of November, 1864, the defendant paid the treasurer of Linn county the taxes on said lands for that year, to wit, $8.96; and the 4th day of December, 1865, paid said treasurer the taxes thereon for that year, to wit, $9.

That the payment by the defendant of the amount due on said contract and said taxes was not fraudulent in fact.

That the fraudulent combination and arrangement charged in defendant's answer and cross claim to have been entered into by said N. M. Day and others at the tax sale of November, 1860, is not proven.

I further report that it was agreed on the trial that the referee should impose such terms in favor of the losing party as to him seemed just and equitable.

I find the following conclusions of law from the facts:

1. That the tax deed in evidence vested in the plaintiff the interest in said lands under said school fund contract, which was purchased by said Ulsaver and the assignees thereof, to wit, the equitable title.

2. That the defendant holds in trust for the plaintiff, and for his use and benefit, the legal title to said lands, which defendant acquired by said patent.

3. That the payment on said contract and of said taxes by the defendant inured to the benefit of the plaintiff.

Finally, that it be decreed that the defendant convey to plaintiff all the right, title and interest in said lands conveyed to him (the defendant) in and by said patent, and that the plaintiff pay the defendant the sum of $114.80, with six per cent interest from June 22, 1864; the sum of $8.96, with like interest, from November 15, 1864; and the sum of $9, with like interest, from December 4th, 1865, and that defendant pay the costs of this suit.

But the plaintiff says, admitting the tax deed to be void, for the reason named, still the *tax certificate* shows **2. — estoppel.** a sale in parcels and not in a lump; the defendant, in his capacity as county treasurer, made the deed and made it wrong—he is therefore *estopped* to make the objection that it is void; or if not estopped, the court can now decree him, though out of office, to make a good deed, one which conforms to the tax certificate. Blackwell, 2d ed., 374, p. 11.

To this position we answer, that there is nothing shown which would render it just, to apply to the defendant the doctrine of estoppel.

To the position that the court can now decree the defendant to make a good deed, we answer that the plead- **3. Decree: prayer of petition.** ings are not framed with any such view, nor is such relief sought therein; on the contrary, the petition is framed upon the assumption that the deed is good.

Again (and this is an insuperable objection to the claim of the plaintiff, which we are now considering), the tax certificate in evidence, while it shows separate sales of the different forties of the land therein described, locates it as in range *six*, while the petition, tax deed and patent locate it in range *seven*.

In this view of the case it is not necessary to decide whether the certificate of sale should have been assigned by the *heir* or the *administratrix;* nor the further question, whether the administratrix, with the will annexed, could execute the power given by the will to sell property; nor the still further question, what effect would be given to the subsequent quitclaim deed from the residuary devisee.

The decree below is reversed, and the plaintiff's petition dismissed, but without prejudice to his right to institute proceedings to obtain a valid tax deed, if he is thereto

entitled, and without prejudice to his rights under such deed if one shall be obtained. Blackwell, 2d ed., p. 372, pl. 10.

