B. F. HEINS v. PHILLIP WICKE, CATHERINE WICKE, and THE IOWA STATE INSURANCE COMPANY, Appellants.

**A greement to Keep Property Insured: WAIVER BY ASSIGNMENT OF POLICY.** At a sale of a lot, the owner took a purchase money mortgage, providing that the purchaser should keep the building insured for the benefit of the mortgagee. The vendor assigned to the vendee a policy of insurance. *Held,* that the assignment of the policy was made to preserve the insurance, and the obligation of the mortgagor to keep the property insured was not waived by such assignment.

**ESTOPPEL BY ASSIGNMENT OF POLICY.** The assignment of a policy of insurance by the grantor to the grantee of the insured property does not estop the former to assert his equitable lien to the proceeds of the policy, under a covenant in a purchase money mortgage that the mortgagor will keep the property insured for his benefit, against the assignee of the policy after a loss who had actual notice of the mortgage and covenant and of the mortgagee's claim thereunder.

**BY ASSIGNING POLICY TO MORTGAGOR.** The assignment of a policy of insurance by the grantor to the grantee of the insured property does not operate to release the equitable lien of the former upon the policy or its proceeds, under a covenant of a purchase money mortgage that the mortgagor will keep the property insured for his benefit.

**WAIVER BY PERMITTING SUIT ON POLICY.** A mortgagee is not estopped to claim the proceeds of an insurance policy taken out by the mortgagor for his benefit, because he permitted the assignee of the policy to sue thereon, where he intervened in such suit, and the intervention was dismissed at the request of the assignee.

**SHARING EXPENSE OF SUIT.** A mortgagee who receives most of the proceeds of a policy of insurance on the insured property, should bear with the assignee of the policy, whose rights are subordinate to his own, part of the expense incurred by her in an action in

which she recovered the proceeds of the policy and made them available to the mortgagee.

EQUITABLE LIEN ON INSURANCE MONEY: *Innocent purchaser.* A mortgagee of insured property whose mortgage contains covenants that the mortgagor will keep the property insured for his benefit, has an equitable lien upon the proceeds of a policy of insurance on the property, as against an assignee of the policy after a loss, who knew of the mortgage and the covenant and his claim thereunder, and is entitled to a personal judgment against the latter, who has received the full proceeds of the policy, to the extent of such equitable lien.

ADJUDICATION BY FORECLOSURE. A decree of foreclosure is not a bar to an action by the mortgagee to be subrogated to the rights of the assignee of an insurance policy on the property, after the loss, under a judgment against the insurance company, where it does not appear that the right to the insurance was litigated in the foreclosure suit.

Judgment: DEFAULT. A judgment by default, under the statutes, for failure of the defendant to appear and answer at the return term of the original notice, must be confined to the specific relief prayed for in the original petition, in the absence of a general prayer for relief, and its scope cannot be enlarged by the filing of an amendment to the original notice and petition, which is not served upon the defendant.

SHOWING OF MERITS: *Payment to clerk.* A judgment debtor who, in response to the request of a third person who claims the benefit of a judgment, pays the amount thereof to the clerk of the court, who subsequently turns the same over to the judgment creditor, is released from liability to such third person who had ample opportunity to notify the clerk of his claim, although the judgment debtor does not notify the clerk thereof.

*Appeal from Linn District Court.*—HON. WILLIAM P. WOLF, Judge.

MONDAY, MAY 24, 1897.

THE following facts appear from the pleadings and evidence: November 18, 1887, the defendant the Iowa State Insurance Company, issued its policy of insurance for one thousand five hundred dollars upon a store building in Fairfax (afterwards called Vanderbilt), Linn county, Iowa, to Joseph

Zabortskey. September 4, 1888, the property was sold to H. E. Smalley, and the policy assigned to him, and the assignment indorsed upon the policy. September 11, 1888, Smalley sold the property to E. Z. Bontty, and the policy was assigned to him, which assignment was indorsed upon the policy. December 29, 1888, Bontty sold the property to the defendant, Philip Wicke and assigned the policy to him; said assignment being indorsed upon the policy, and consent given by the company. Bontty's assignment read: "I hereby assign to Philip Wicke the policy of insurance within written, subject to all liabilities, and entitled to all rights and privileges to which I am liable and entitled by virtue thereof." December 29, 1888, when Bontty made his sale of the lot to Wicke, he took a purchase-money mortgage from said Wicke securing a note of same date for one thousand two hundred dollars, which bore interest at eight per cent. annually. One provision of said mortgage was to the effect that said Philip Wicke was to "keep all buildings on said premises constantly insured for two-thirds of their value in good and satisfactory insurance company for the benefit of the mortgagee." That said mortgage was filed for record December 31, 1888, and duly recorded. September 10, 1890, said buildings were destroyed by fire, and that the mortgage debt was and still is unpaid. That the policy heretofore mentioned was the only insurance upon said property when said mortgage was given, as well as since said time. October 4, 1890, said Philip Wicke made proof of loss under said policy, in which he mentions the mortgage upon said premises which he executed to Bontty. Thereafter the defendant the insurance company demanded additional proof of loss. This demand was made after the company knew of the existence of the mortgage. The value of the lot, irrespective of the building insured, is a matter of contention; it being given

by witnesses from two hundred and fifty dollars to
seven hundred dollars. February 2, 1891, Philip
Wicke made an assignment of said policy to the
defendant Catherine Wicke, as follows: "For value
received, I hereby sell, transfer, and assign unto
Catherine Wicke all my claim and cause of action
against the Iowa State Insurance Company by reason
of loss under policy No. 32,293, issued by said com-
pany on the twenty-first day of December, 1887, to
Joseph Zabortskey, and assigned to me before said
loss; authorizing her to sue for, recover, receive, and
receipt for all money due from and owing by said
company under and by virtue of such loss and policy
of insurance." The defendant insurance company
was notified of the existence of the mortgage and of
the plaintiff's claim to the insurance money, prior to
the time Philip Wicke assigned said policy to Cath-
erine Wicke. Catherine Wicke knew of the mortgage
long before she took the assignment of the policy.
It is claimed, and there is evidence tending to show,
that Catherine Wicke had actual notice of the plain-
tiff's claim to the insurance money prior to taking the
assignment of the policy, though as to this the evi-
dence is in conflict. The insurance company refusing
to pay the loss on the ground that the property was
incumbered by mortgage in violation of the terms
of the policy, Catherine Wicke brought suit on
the policy, and recovered a judgment in the district
court on November 17, 1891, which was affirmed
by this court on January 22, 1894. 90 Iowa, 4 (57 N.
W. Rep. 632). Plaintiff in this case intervened in the
suit by Catherine Wicke upon the policy, and claimed
the proceeds of the policy under his mortgage, but
finally withdrew, and dismissed his intervening
petition, without prejudice. October 22, 1891, and
before Catherine Wicke had obtained a judgment
against the insurance company, plaintiff commenced

this action. The claim in the original petition was that plaintiff be subrogated to the judgment rendered in favor of Catherine Wicke, and he prayed for a decree against Catherine Wicke and the insurance company, subrogating him, to the amount of his mortgage, in the judgment rendered on said policy. There was no prayer for general relief. The original notice served upon the company asked the same as the petition, and expressly stated that "no other additional judgment is sought than to be subrogated to the right of Catherine Wicke in and to said judgment." The insurance company did not appear or answer this petition. The petition was amended, the last amendment being filed after default had been entered against the company. In this amendment plaintiff pleaded that the company had paid the money into court in disregard of his rights; that Catherine Wicke had drawn the same; and he asked and obtained a personal judgment against the insurance company and Catherine Wicke. Catherine Wicke appeared and answered in said suit. She admitted the execution of the note and mortgage, set out the assignment made by Bontty to Philip Wicke and from the latter to herself, that she paid a valuable consideration therefor, that she had no knowledge of any interest claimed by Bontty in the policy of insurance, and that plaintiff was estopped from having or claiming any interest in said policy adverse to her, and denied all other allegations of the petition. Plaintiff, in a reply, admitted the assignment by Bontty, but averred that it was made only to transfer the legal title to Philip Wicke, and that the defendant took the policy with knowledge and notice of the rights of plaintiff's assignor, and after notice to the debtor, the insurance company, of the rights and claims of plaintiff's assignor. Afterwards plaintiff amended his petition, pleading the recovery of the judgment by Catherine Wicke against

the insurance company; that he had recovered a judgment on the note and for a foreclosure against Philip Wicke, for one thousand six hundred and seventy-eight dollars and seventy-two cents and attorney's fees and costs, and that the real estate was worth not more than two hundred dollars; that the Iowa State Insurance Company paid the full amount of the judgment which had been rendered against it to the clerk of the Linn district court, and said Catherine had, without authority of law, drawn said money. He asked that his rights to the proceeds of said policy might be established as superior to the rights of said Catherine, that the decree of foreclosure be extended to the proceeds of said policy, and for judgment against Catherine Wicke and the insurance company. Catherine Wicke answered said amendment, pleading that the mortgaged property, after the fire, was worth seven hundred dollars, and denied, in substance, all the allegations of the amendment. Afterwards she amended, pleading the incumbrance in violation of the terms of the policy; that a prior action had been brought by the plaintiff against Philip and Catherine Wicke in said court to foreclose said mortgage which proceeded to judgment and decree, and that such action estops plaintiff from maintaining this action. July 9, 1894, plaintiff again amended his petition, averring the payment of the money by the insurance company, and asking a personal judgment against Catherine Wicke and the insurance company. There was a denial by Catherine Wicke. The court entered a judgment against Catherine Wicke and the insurance company for one thousand five hundred dollars, and both parties appeal. Because the court did not render a judgment in plaintiff's favor for the full amount he claimed to be due to him, he appeals. August 19, 1895, the Iowa State Insurance Company filed a motion to set aside the default entered against it, which was overruled,

and from this ruling it also appealed.—*Affirmed* on appeals of plaintiff and Catherine Wicke, and *reversed* on appeal of insurance company.

*Rickel & Crocker* for appellant Catherine Wicke.

*H. Scott Howell & Son* for appellant Iowa State Insurance Co.

*Heins & Heins* for appellee.

KINNE, C. J.—I. We will first consider the appeal of the Iowa State Insurance Company. From the facts already set forth it appears that the insurance company did not appear in this case in the district court, nor did it in fact file any pleading therein. It was defaulted because it failed to appear and defend in the action. Now, said company, having been served with notice that subrogation to the fund to be paid in on the judgment before rendered against it was all the relief asked, and the notice expressly stating that "no other additional judgment is sought than to be subrogated to the right of Catherine Wicke in and to said judgment," it had a right to rely upon the fact that no other or further claim would be made against it in the suit, in the absence of notice of making another or additional claim. The company had no interest in the controversy between plaintiff and Catherine Wicks as to the appropriation of the fund due from it under said policy. It was immaterial to it who got the money, if its liability under the policy, and the judgment thereon, was fully and finally discharged. Therefore it could have had no interest in joining in the litigation between said contesting parties so long as no personal claim was made against it. Nothing is better settled than that where a defendant served with notice of a suit does not appear and answer, but makes default, no decree or judgment

can be entered against such defendant granting relief not specifically prayed for, or which is not clearly within the contemplation of a general prayer for relief. The default in such case entitles the plaintiff to recover only to the extent of the relief sought in the petition. *Johnson v. Mantz*, 69 Iowa, 710 (27 N. W. Rep. 467); *Byam v. Cook*, 21 Iowa, 392; *Lafever v. Stone*, 55 Iowa, 49 (7 N. W. Rep. 400); *Tice v. Derby*, 59 Iowa, 312 (13 N. W. Rep. 301); *Marder v. Wright*, 70 Iowa, 42 (29 N. W. Rep. 799); *Mickley v. Tomlinson*, 79 Iowa, 383 (41 N. W. Rep. 311, and 44 N. W. Rep. 684); *Worth v. Wetmore*, 87 Iowa, 62 (54 N. W. Rep. 56); *Shelley v. Smith*, 50 Iowa, 543; *Larson v. Williams*, 100 Iowa, 110 (69 N. W. Rep. 442); *Bosch v. Kassing*, 64 Iowa, 314 (20 N. W. Rep. 454). Under the original notice and the original petition filed in this case, and in the absence of an appearance by the defendant insurance company, the court had no jurisdiction to enter a personal judgment against it. There was no prayer for general relief; there was no prayer for a personal judgment against the company, and hence no basis, either in the notice or petition, for entering a personal judgment against the company. The situation was not changed by the filing of an amendment to the petition asking for a personal judgment. No further notice was served upon the company. It was not advised that any such relief would be claimed, but, on the contrary, in the only notice served upon it it was told that no relief was, or would be, sought against it, save that plaintiff be subrogated to the rights of Catherine Wicke in and to the policy and the judgment in her favor. We think appellee's argument is a confession that if the insurance company did not appear and answer, the court had no right to enter a personal judgment against it, but, whether it so confesses or not, it is certain from the record before us that the company did

not in fact appear, and did not file an answer in the case. The personal judgment against it was, therefore unwarranted.

II. Did the court err in refusing to set aside the default and judgment entered against the insurance company? Code, section 3159, provides: "The judgment shall not be vacated on motion or petition until it is adjudged that there is a valid defense to the action in which the judgment is rendered." Appellee contends that no valid defense was shown, therefore the ruling of the court refusing to set aside the default was right. From the showing to set aside the default, as amended, it appeared that the company, on June 5, 1895, paid to the clerk of the district court of Linn county the full amount of the judgment rendered against it on said policy of insurance; that plaintiff had intervened in said suit; that afterwards he withdrew his petition of intervention, with the consent of the parties to the suit; that at said time he asked the attorney for the company if they would pay the money into the hands of the clerk of the court, in case judgment was obtained in said cause, and was assured that they would do so; that he informed said attorney that he intended to bring suit against Catherine Wicke and the insurance company, asking to be subrogated to the rights of Wicke Bros. under the policy, and stated that if he did not, he would take no advantage of the company if they would pay the money to the clerk. February 11, 1892, the attorney for plaintiff wrote the company, inclosing an original notice, and asking an acceptance of service thereof. In this letter he said: "While I have not much hope in this matter (for I think the case will be reversed), yet, if it should stand, I wish to be in shape to compel the Wickes to do what is right by us." The company accepted service of the notice. March 9, 1892, the company sent to the clerk of the

district court of Linn county, Iowa, an answer, pleading that the company had been sued upon two policies by Catherine Wicke; that the case was undetermined, and asking the court to protect the company in its rights, and offering to pay any sum of money that might be found due Catherine or Philip Wicke into the hands of the clerk of said court; that it asked said clerk to file said answer in the case of Heins against Wicke, but it was never filed in this case. February 17, 1894, the attorney for plaintiff wrote the company as follows: "I learn that the case of *Wicke v. State Insurance Co.* has been affirmed by the supreme court. I wish, therefore, to remind you of the case that is still pending in the district court of Linn county, entitled *'B. F. Heins v. Philip Wicke, Iowa State Insurance Co., et al.,'* seeking to subrogate the mortgage to the proceeds of the said policy. You will remember that notice was served on you, and you appeared in the case and answered. The money will therefore better be paid to the clerk of the district court for such disposal as the court may decide and direct." The company answered: "Yes. What money we will have to pay in the Wicke case we will pay to the clerk of the district court." The showing also is that the original notice and petition did not refer to any claim for a personal judgment against the insurance company, and nothing was asked except that the plaintiff be subrogated to the rights of Catherine Wicke to the insurance money, and that afterwards, without notice to said company, the plaintiff amended his petition, setting up a new cause of action not warranted by the notice or petition, which said amendment did not come to the notice of the company until August 8, 1895; that after the money had been paid to the clerk a judgment was rendered in said action for it against the company in favor of plaintiff. The company aver that the default

and judgment was wrongfully entered by fraud and misrepresentation and irregularities, and without disclosing to the court the facts. Appellee's claim is that, because the company did not instruct the clerk of the court to whom it paid the money in satisfaction of the judgment, to hold the same until the court should determine who was entitled to it, it paid said money in disregard of plaintiff's rights, and should be compelled to pay it a second time. The contention is based upon the claim that the company, before it paid the money, had notice that plaintiff claimed the same. Let it be conceded that the company had such notice. Does that interfere with its right to pay the money to the clerk of the court in discharge of a judgment which had been rendered against it? We think not. True, it might not, with such notice, pay the money to the other claimant of it. But in paying to the clerk it was discharging its obligation in a legal way, and it clearly had a right to so pay, unless it had done something to mislead the plaintiff into the belief that if it did so pay it would tie the money up in the clerk's hands by conditions attached to his paying it out. The suggestion in the letter of appellee's attorney to pay the money into court was followed by the company. The words of the letter, "for such disposal as the court may decide and direct," did not require the company to undertake to hold the money in the clerk's hands until the contest between appellee and Catherine Wicke should be determined. Appellee knew the company would pay the money to the clerk in satisfaction of the judgment. He had ample opportunity before it was so paid, to have taken the necessary steps to have kept it in the clerk's hands until such time as it was judicially determined to whom it should be paid. He did not do so. It was no part of the company's duty to take steps to hold the money in the

hands of the clerk. They paid it to that officer in satisfaction of the judgment, as they had a right to do, and there is no reason in law or equity why they should be compelled to pay a second time. We think there was a good defense shown, and that the court erred in refusing to set aside the default. As this view disposes of the case so far as the insurance company is concerned, we need not consider other reasons urged for a reversal of the judgment and decree as to it.

III. As to the appeal of Catherine Wicke. This appellant contends that, inasmuch as Bontty assigned the policy of insurance to Philip Wicke, it operated to release any equitable lien Bontty might otherwise have had in the policy or its proceeds, by virtue of his mortgage. We do not think so. As there was a sale of the property, the buildings upon which were insured, such sale would vitiate the policy unless it was assigned to the purchaser with the consent of the company. Now, we find that the mortgage and assignment of the policy were all executed as a part of one and the same transaction. The mortgage provided that the mortgagor should keep all of the buildings constantly insured. This was a covenant which would only be discharged by having the insurance alive at all times during the life of the mortgage. In view of this obligation upon Philip Wicke it is obvious from all of the evidence and circumstances that the assignment of the policy was made to preserve the insurance, and that the obligations assumed by the mortgagor to keep the property insured were in no wise waived or released by such assignment.

IV. Appellant claims that the assignment by Bontty to Philip Wicke estops plaintiff from recovering the amount of the loss of Philip Wicke's assignee, Catherine Wicke. Under the evidence there is no

doubt that Catherine Wicke had actual notice of the Bontty mortgage long prior to the time she took the assignment of the policy from her son, Philip Wicke. Whether she had actual notice at the same time of the provision of the mortgage touching the insurance, and of Bontty's and his assignee's claims thereunder, is a matter as to which the evidence is in conflict. Without stopping to point out the reasons for our conclusion, we may say that we think she did have actual notice of the insurance clause in the mortgage, and of the claim of Bontty and his assignee thereunder, prior to the time she took the assignment of the policy. She was not, therefore, misled by either the acts or silence of the appellee and his assignor. She voluntarily made the purchase of the policy, knowing that the appellee or his assignor made a claim to its proceeds by virtue of the insurance clause in said mortgage. The necessary elements of an estoppel are wanting.

V. Appellant places much reliance upon his plea of former adjudication. It seems that appellee commenced and prosecuted an action for the foreclosure of his mortgage, and obtained a judgment and decree thereon, prior to the judgment and decree in the action at bar, and it is said he cannot now maintain this action based upon the same mortgage. To be a bar, a judgment must be between the same parties or their privies, and must equally bind both parties in the case in which an estoppel is claimed. The very question in issue in the present case must have been involved in the former action, and have been determined therein. *Woodward v. Jackson*, 85 Iowa, 432 (52 N. W. Rep. 358), and cases cited. The plea of former adjudication is denied, and substantially the only evidence touching the matter is the decree entered in the former case. From it it does not appear that the matter now litigated was involved

in the former action, nor that the parties were the same, nor that the present parties were in privity with those in the former action. Nor do we think that, as a matter of fact, the former action if shown to have been between the same parties or their privies, would bind the present parties as to the matter now in controversy.

VI. It is insisted that plaintiff has no right to subrogation as against Catharine Wicke, and hence is not entitled to a personal judgment against her. We have no doubt that plaintiff had an equitable lien upon the fund, which might be recovered by Catherine Wicke from the insurance company, to satisfy which so much of the proceeds of said policy as might be necessary should be thus applied. Such being plaintiff's right, and said Catharine Wicke having received the full proceeds of said policy, we discover no reason for holding that he is not entitled to a personal judgment against Catherine Wicke. Nor do we regard it as of any importance that this policy was in existence upon the property prior to the sale of the real estate from Bontty to Philip Wicke. *Ames v. Richardson,* 29 Minn. 330 (13 N. W. Rep. 137), and cases cited; 1 Jones, Mortg., sections 400, 402, 403. In view of our finding that Catharine Wicke had actual notice of plaintiff's equitable lien before she purchased the policy, we are not called upon to determine as to whether or not the provision of the mortgage relied upon was a covenant running with the land.

VII. Appellant contends that plaintiff, by standing by and permitting Catherine Wicke to litigate for the recovery of the amount of the policy, in which suit she was successful, is now estopped from receiving the proceeds of the policy which have been paid to her by the clerk. When Catherine Wicke instituted her suit against the company, she had an interest in the amount to be recovered, in

addition to the sum which would be necessary to satisfy plaintiff's equitable lien. It appears that in her suit against the company plaintiff intervened, and at her request afterwards withdrew his appearance and petition of intervention. Surely, under the circumstances, plaintiff is not estopped. That he failed to prosecute his intervention petition was due to Catherine Wicke's request. We discover nothing in this record upon which an estoppel can properly be predicated. We have considered all questions discussed by appellant which are deemed important, and find no ground for disturbing the judgment and decree rendered against Catherine Wicke.

VIII. As to the appeal of the plaintiff. The lower court entered a judgment in favor of plaintiff for one thousand five hundred dollars. At that time some one thousand eight hundred dollars was due upon plaintiff's judgment, and plaintiff insists that he should have had judgment for the full amount due. His mortgage covered the lot as well as the buildings thereon. He has a decree of foreclosure for the sale of the lot. Just what it is worth may be a matter of doubt, but plaintiff admits that its value is from two hundred dollars to two hundred and fifty dollars. It is true, the judgment and decree entered below in this case fail to show why the court reduced the amount of plaintiff's recovery from one thousand eight hundred dollars to one thousand five hundred dollars. While the record is not clear as to the value of the lot upon which the plaintiff's judgment is now a lien, still he admits it to be worth from two hundred dollars to two hundred and fifty dollars. This amount was properly deducted from the amount of his recovery as against the proceeds of the policy. Again, it appears that Catherine Wicke was compelled to pay out a large sum of money in prosecuting the litigation upon the insurance policy. She reaps but

little benefit therefrom, and it is but just and equitable that plaintiff, who receives most of the proceeds of said policy, and was chiefly benefited by the litigation, should bear a part of the burden incident to the recovery of the fund. Just how much the court below reduced the amount of plaintiff's recovery on this account, does not appear, but it is apparent, considering the value of the lot, the amount of recovery on the policy, and the amount of the judgment rendered in plaintiff's favor, that he has no just cause of complaint. On plaintiff's appeal the judgment and decree below are AFFIRMED. On the appeal of Catherine Wicke the judgment and decree below are AFFIRMED. On the appeal of the Iowa State Insurance Company the judgment and decree below against it are REVERSED.