SCHUSTER BROTHERS et al.. Appellees, v. DAVIS BROTHERS, INCORPORATED, et al., Appellants.

JUDGMENT: Absence of Prayer. Prayer for relief is just as essential as plea and proof. So held where personal judgment was erroneously entered in the absence of any prayer therefor.

APPEAL AND ERROR:, Failure to Question Insufficient Cause of Action. A legally insufficient cause of action becomes sufficient, in the absence of attack thereon in the trial court.

PLEADING: Necessity for Prayer, Etc. Plea, prayer, and proof are essential conditions precedent to the entry of judgment. So held where the court erroneously entered judgment in the absence of either plea or prayer.

CORPORATIONS: Equitable Ownership of Property. Property purchased by an officer of a corporation in his own name, with funds paid him by the corporation as compensation for official services, does not equitably belong to the corporation, simply because no formal contract existed as to what compensation should be paid for such services.

FRAUDULENT CONVEYANCES: Reliance on Representation. One may not predicate reliance on a representation which is contradicted by an authorized public record, of which he is charged with notice, and by his own personal knowledge.

*Appeal from Mahaska District Court.*—HENRY SILWOLD, Judge.

JANUARY 14, 1919.

CREDITORS of the defendant corporation prayed that certain real estate, standing in the individual name of Jenkin E. Davis and John W. Davis, be subjected to the payment of corporate debts. The trial court granted this prayer, and, in addition, entered personal judgment against said two individuals for the amount of said corporate debt, and against defendant Evans, on the theory that he was a subscriber to stock of said corporation for which he had not

paid, for the par value of such stock.  Defendants appeal.—
*Reversed.*

*W. R. Lacey* and *O. C. G. Phillips,* for appellants.

*H. H. Sheriff* and *Burrell & Devitt,* for appellees.

SALINGER, J.—I.  The plaintiffs obtained judgment
against the defendant Davis Brothers, Incorporated.  For
the purposes of the point now under consideration, it suf-
fices to say that the petition alleges: First,
that the defendants Jenkin E. Davis and
John W. Davis conspired together for the
purpose of fraudulently taking title to described real prop-
erty in their own names; that their purpose was to place
said property beyond the reach of any creditors of the cor-
poration; and that it was part of the conspiracy to pay for
the property with funds belonging to the corporation; that
they had power so to pay and did so because they were the
officers and directors of the corporation; second, that the
two Davises, acting as officers and directors of the corpora-
tion, have, for many years, represented to "their" credito s
(meaning, probably, the creditors of the corporation) that
the property, the title to which they had placed in their in-
dividual names, was the property of the corporation, and
thereby induced the creditors to furnish merchandise to
the corporation; and that said judgments were obtained be-
cause the creditors were not paid for that merchandise;
third, that the Davises violated the statute governing in-
corporations; that, on account of the imperfect and im-
proper organization and the fraudulent management of the
business of the corporation by the Davises, as well as on
account of the other matters aforesaid, the two Davises
are personally liable to plaintiffs for what the corporation
owes the plaintiffs.  It is further alleged that, notwithstand-
ing the placing of the title of property out of which the

1. JUDGMENT:
absence of
prayer.

creditors seek satisfaction in the individual name of the two Davises, the equitable title thereto is in the defendant incorporation, and that the plaintiffs have a lien on said real estate to satisfy their said judgments.

Assume it debatable whether, if all that is charged were admitted, it would make the two Davises personally liable to pay the debts owing by the corporation, or a judgment obtained against the corporation alone. But the petition was in no manner attacked, and if these allegations are proved, the defendants Jenkin E. Davis and John W. Davis are in no position to say that the facts set forth in the petition do not create such personal liability. But something more than plea and proof is necessary for relief, and that is, prayer for relief. One prayer of the petition is that a receiver be appointed to take charge of the property in question. None was appointed. The only other demand for relief is, "that their judgment be declared a first lien on the property above described from October 13, 1904." On this prayer, the decree not only established the lien prayed, but ordered personal judgment against the two Davises, and special execution to make any deficiency on sale of the property. This was done because the court found that they had been guilty of fraudulent conduct in organizing and managing the corporation, and possibly, also, because of a finding that said other matters charged were established. In addition, and without even an allegation of fact to cover the point, personal judgment was entered against defendant Evans on the theory that he had become the holder of $200 of shares in the defendant corporation, of the par value of $200, without making payment therefor. As to the defendants Jenkin E. Davis and John W. Davis, this much of the decree cannot be sustained, for want of prayer therefor. As to the defendant Evans, the same is true, and, in addition, there is no allegation of fact whereon to base the relief.

2. APPEAL AND ERROR: failure to question insufficient cause of action.

Section 3559 of the Code provides that, among other things, the petition shall contain a demand of the relief to which the plaintiff considers himself entitled. This require-

3. PLEADING:  necessity for prayer, etc.

ment has some purpose, and would seem to indicate on its face that no relief not so demanded shall be given. While it is said in *Browne v. Kiel*, 117 Iowa 316, at 318, that "a judgment must follow the prayer for relief, and cannot be extended beyond it," this hardly controls here, because the judgment spoken to in that case was on default, and is governed by a special statute. Perhaps the declaration of *Byam v. Cook*, 21 Iowa 392, that, in a suit in equity, relief will not be granted which was not asked in the petition, is also not controlling, because this was said in a case where the court refused to grant such relief. But from *Stokes v. Sprague*, 110 Iowa 89, it can well be inferred that nothing should be awarded beyond the relief demanded, because the decision recognizes that the prayer is material, in that it holds that a demurrer in an equity suit is sufficient in form where it complies with the statute form by charging that the facts stated do not entitle plaintiff to the relief demanded. In *Baker v. Oughton*, 130 Iowa 35, it is declared to be error not to instruct that no more should be allowed on a single item, in an account exhibiting several items, than was claimed for that item, though the verdict was less than the aggregate amount of all the items. We held in *Mobley v. Dubuque Gas L. & C. Co.*, 11 Iowa 71, that a court of equity will not decree foreclosure against a defendant when the bill asks for no such decree. In *Marder, Luse & Co. v. Wright*, 70 Iowa 42, suit in equity to enforce a vendor's lien, it was held error to grant relief entirely distinct from that demanded in the petition, even though such relief might be warranted by allegations of the reply, if that were the pleading in which to ask relief. In *District Twp. v. Farmers' Bank*, 88 Iowa 194, there was a reversal, among other

things because relief was granted where no relief of the kind was asked. In *Lafever v: Stone,* 55 Iowa 49, it is conceded the court had jurisdiction to grant the relief given, were it prayed, and there was a reversal for the sole reason that, while there was power to give such relief, it was improperly granted because not prayed for. It is squarely ruled in *Tice v. Derby,* 59 Iowa 312, that neither party should be granted relief greater than is demanded. In that case, a suit to quiet title, the court decreed plaintiff a larger interest than he claimed. It is said in *Bottorff v. Lewis,* 121 Iowa 27, 31, 32, that it was error to award the plaintiff seven thirtieths of land involved in a partition suit when she asked for but a tenth interest, and said that:

"We have uniformly held it is error for the court to grant relief not called for by the petition, or a judgment or decree different from that prayed for."

Among other cases, this case cites *Marder, Luse & Co. v. Wright,* 70 Iowa 42, *District Twp. v. Farmers' Bank,* 88 Iowa 194, and *Tice v. Derby,* 59 Iowa 312, upon which we have already commented. The departure, then, was more radical than in all said cases.

The personal judgments cannot be sustained.

II. We have disposed of those allegations of the petition wherewith it is attempted to base a personal liability of the defendants other than the defendant corporation. It will be remembered the petition does ask the relief of establishing the judgments obtained by the plaintiffs against the defendant corporation as a lien upon certain property. The statements that the individual defendants violated the statute in organizing said corporation and fraudulently managed the same, and that they induced the complaining creditors to believe that said property belonged to the incorporation, despite the fact that title thereto was taken in the individual names of the two Davises, and possibly other

4. CORPORA-
TIONS: equi-
table owner-
ship of prop-
erty.

statements, are pleaded as the basis for obtaining personal judgment against the individuals who are made defendants. They have been considered in connection with the holding that there was no prayer entitling plaintiffs to the personal judgments entered. But, while the allegation that the Davises fraudulently took title in their own name to the property in question, and used their powers as managers and officers to pay for same from the funds of the corporation, may be a basis for claiming personal judgment, it unquestionably well pleads a basis for making said judgments a lien upon said property. The allegation was in no manner attacked. Whether it is worked by failure to attack, or by the fact that the allegation is well pleaded, there is, then, a basis in the petition for making said judgments a lien upon said property, despite the fact that the title thereto is in the name of the two Davises. And *that* relief *is* prayed. The question remaining, then, is whether there is any evidence of the alleged fraudulent practices. The record is quite confused, and we have been compelled to study it with exceptional care. Such examination satisfies us that the evidence does not sustain the charge. It discloses that the individual Davises purchased the property before the corporation came into existence; that, originally, they undertook to pay for it in relatively small monthly payments, quite within their means; that the purchase price of $6,000 was in part paid off, and that then $5,400 was borrowed by these individuals of Evans upon their individual notes and mortgage to Evans, which have since been cancelled through payment. That this $5,400 was paid from funds belonging to the corporation, there is no evidence. The utmost there is, is a claim in the briefs that the payments must be held to have been from the funds of the corporation, because the two Davises performed no services for it except such as their official position in the corporation obligated them to render, and that payment made for

those services is unlawful, because there was no formal contract as to what compensation should be paid for such services. There is not even evidence that the payments were made from the compensation received for services.' But if there were, the fact that no formal contract for the services had been entered into would not work that paying for property with such compensation would put the equitable title to such property in the corporation. In one word, there is no evidence whatever to sustain a holding that the real estate which the creditors seek to subject, is or ever was the property of their judgment debtor; or, stating it another way, there is no evidence that the property was paid for by the funds of the corporation.

III.   There is strong reason for holding that the claim of the plaintiffs is, in any event, barred by the statute of limitations, and that the two Davises hold title by adverse possession. The plea is not artificially made in answer, but it does appear therefrom that dismissal of the petition is prayed on the ground that, much more than ten years before this suit was brought, the deed to the two Davises was put on record, and that some of the creditors, at least, had actual notice through their agents that the title was in the name of the two Davises, and that they were claiming to be owners. It is unnecessary to enlarge upon this point or to make it controlling, in view of the fact that we find that the claims of the plaintiff are not established, without reference to the affirmative defenses aforesaid.

IV.   The defendant Jenkin E. Davis, while a managing officer of the defendant corporation, made alleged statements to a commercial agency, the material part of which is that the defendant corporation owned some undescribed real estate, estimated to be worth between $7,000 and $8,000. While it may be conceded the corporation was bound by these statements, if it be compe-

5. FRAUDULENT
   CONVEYANCES:
   reliance on
   representation.

tently shown that any were made, the evidence shows without dispute that the defendant John W. Davis and the defendant Evans had nothing to do with making these statements, and knew nothing about them. It follows that, even if this corporation and Jenkin E. Davis might be affected by the making of these statements, they have in no view any effect upon the rights of the defendants John W. Davis and Evans. So far as any effect upon the corporation and Jenkin E. Davis is concerned, it is first to be noted that the statements themselves were shown by what was confessedly a copy, without the laying of any foundation for secondary evidence, and over objection that they were not the best evidence. Passing that, there is no evidence that any plaintiff other than Schuster knew anything about these statements, or relied upon them. The credit man for the plaintiff Schuster does say that he saw the copies, and did rely upon them, and through such reliance extended credit to the corporation. He could not rely upon the statements for more than they asserted. He confesses he did not know, when he read the assertions, that the corporation had real estate, what that real estate was, or where it was. Reading such a statement will not authorize the reader to say that he gave credit upon the assurance that the corporation owned the particular piece of property out of which it is now sought to make satisfaction. No one can say whether credit would have been extended if plaintiff Schuster had known that the statement referred to this property. To be told and to believe that the corporation owned real estate of some kind, somewhere, worth $8,000, is quite a different thing from being induced to give credit in reliance upon the assertion that the corporation owned a particular piece of property in Oskaloosa. While influenced by the ownership of property believed to be worth $8,000, no one may say whether he would have believed the property was worth that, had he been advised that this was this property.

Passing that, in turn, it appears without dispute that, at the very time when these statements were being issued, the records of Mahaska County asserted that this particular piece of property was not the property of the corporation, no matter how much real estate it might own or not own. And it is further undisputed that the representative of Schuster who sold the goods in question was informed, at all times before credit was given, that the title to this particular property was in the name of the two Davises, and that they claimed to be its owner. Grant every possible effect for the naked statement that the corporation owned real estate of some kind, somewhere, estimated to be worth between $7,000 and $8,000, and there is nothing to estop Jenkin E. Davis from now asserting what is the established fact: to wit, that the title to this particular piece of property was of record in such manner as to advise all the world that the corporation did not own it, and that the like information was given to any who claim reliance upon the statements by the actual notice which was given to the representative of Schuster.

It follows from what we have said that, in our judgment, the decree of the district court must be—*Reversed.*

. LADD, C. J., EVANS and STEVENS, JJ., concur.