M. R. FABER, Appellant, v. R. VAN ZYL, Appellee.

**BILLS AND NOTES:** Holdership in Due Course—Evidence. Evidence
1   reviewed, and held to present a jury question, both on the issue
    of fraud in the inception of the note and on the issue of the plaintiff's holdership in due course.

**JUDGMENT:** Conclusiveness—Fraudulent Issuance and Fraudulent
2   Purchase of Stock Contrasted. Judgment of dismissal on the merits
    of plaintiff's action to recover of corporate promoters the amount
    paid by plaintiff for stock fraudulently *issued* by the corporation is
    not an adjudication of the right of the same plaintiff, when sued by
    one of the same promoters on the note given for said stock, to plead
    that he was fraudulently induced to *purchase* said stock.

*Appeal from Plymouth District Court.*—CHARLES A. DEWEY,
Judge.

NOVEMBER 19, 1924.

ACTION at law, upon a promissory note. The facts are stated in the opinion. From a judgment upon a·verdict for defendant, the plaintiff appeals.—*Affirmed.*

*Kass Bros. & Sievers* and *T. M. Zink,* for appellant.

*Klay & Klay,* for appellee.

VERMILION, J.—The appellee defended against the note in suit on the ground that it was procured by false and fraudulent representations on the part of one Rutger as to the character and value of certain shares of stock of the National Potash Corporation, for the purchase of which it was given, and as to the financial standing, operations, and earnings of the corporation. It was alleged by the defendant (1) that Rutger was the agent of plaintiff to sell such stock, and (2) that plaintiff was not a holder in due course of the note in suit. The reply of plaintiff denied any fraud, alleged that plaintiff was a holder in due course, and pleaded a former adjudication.

1. BILLS AND NOTES: holdership in due course: evidence.

The lower court refused to admit the evidence offered in support of the plea of *res judicata,* and submitted to the jury the question of fraud in the inception of the note; whether Rutger was the agent of appellant to sell the stock; and whether appellant was a holder of the note in due course. The errors assigned relate to the refusal of the court to admit the evidence offered on the plea of *res judicata,* and to the sufficiency of the evidence to support the plea of fraud. No complaint is made of the instructions.

There is no dispute as to some of the features of the transaction out of which the note arose. It thus appears that, on January 10, 1919, the note was executed and delivered by appellee to one Rutger for fifty shares of the capital stock of the National Potash Corporation at a price of $150 per share. It is shown without substantial dispute that, after selling the stock to appellee, Rutger purchased thirty-three shares from appel-

lant, eight shares from Rev. Theobold, and six shares from one Grieppenberg at $125 per share, and delivered them, with three shares belonging to himself, to appellee in the form of a new certificate for fifty shares issued by the company. The note, which was payable to the maker, the appellee, and had been indorsed in blank by him, was turned over to appellant, who gave to Grieppenberg, Theobold, and Rutger receipts designating their respective interests in the note in proportion to the amount of the stock furnished by each to make up the fifty shares sold to appellee. Appellant paid to Rutger the difference between the $125 per share, the amount which the owners of the stock, except Rutger, were to receive, and the $150 per share which appellee was to pay, as represented by the note.

In August, 1918, and on two or three occasions between then and the time of the transaction in question, appellee had purchased stock in the National Potash Corporation. These purchases were made, as we understand, directly or indirectly from the corporation itself; but, be that as it may, he was a stockholder in the corporation at the date of the purchase of the stock in question. He claimed, however, that he had then made no investigation of the affairs of the company or participated in the management of its affairs. He testified that Rutger, prior to the last purchase and the giving of the note in question therefor, represented that he was the attorney for the corporation, and had been sent to give appellee some information, to tell him that they were "doing fine, that they were working right along, doing well and making good," and that they needed some money, and if appellee could take some stock, the company would like it; that the stock was worth $150 per share, and par $100; that they were making one hundred tons (of potash) a day. He further testified that, on the day he gave the note, Rutger said that the company would like to have him buy some stock, and that he wanted to sell him some company stock, and that Rutger told him that the appellant would carry his note for the stock and give him time, and asked him to telephone to appellant; that he did so, and told appellant that Rutger wanted to sell him (appellee) some potash stock, and asked what he thought about it; that appellant said it was a

very good investment, and he would take appellee's note at six per cent until June. This testimony is denied in material respects by Rutger and by appellant. Appellee further testified that he relied upon the representations made by Rutger, and believed that he was buying the stock from the National Potash Corporation, and that he would not have bought it, but for such representations. The stock so purchased was subsequently tendered back to appellant, and the tender refused.

Without discussing the testimony at length, we are clearly of the opinion that a case was made for presentation to the jury, both upon the question whether the note was procured by fraud, and also whether appellant was a holder in due course. We have no occasion to discuss the question whether the representation that the stock was worth $150 per share was actionable, or whether there was evidence of the falsity of some of the other representations. The plain inference from Rutger's statements, as testified to by appellee, was that the stock he was selling belonged to the company, and that the company would get the benefit of the sale. These were clearly matters of fact, and were of peculiar importance to one considering the purchase of additional stock, and well calculated to influence him. The issue of fraud was properly submitted to the jury.

If Rutger was appellant's agent for the purpose of selling the stock, appellant was bound by the representation made in so doing. If no agency existed, the question whether appellant was a holder in due course of the note became material, and upon the record was clearly one for the consideration of the jury.

To sustain his plea of *res judicata*, appellant offered the pleadings and decree in an action in equity prosecuted to an unsuccessful termination by one Lohr against appellant and others. Lohr was the assignee of appellee and other holders of stock in the National Potash Corporation and certain other corporations that were merged in that corporation. The assignment was as follows:

2. JUDGMENT: conclusiveness: fraudulent issuance and fraudulent purchase of stock contrasted.

"We, the undersigned stockholders of the National Potash Corporation, hereby authorize and empower A. W. Lohr to commence an action in equity in his own name, against the di-

rectors and promoters of the National Potash Company, the United States Potash Company, and the Antioch Potash Company and the National Potash Corporation, for the purpose of such action hereby assign and transfer to the said A. W. Lohr all our title and interest to any claim for damages or other legal rights against said promoters and directors."

Lohr began an action in the district court of Plymouth County against appellant and numerous others, alleging that they were officers and promoters of certain corporations organized under the laws of Nebraska, which were attempted to be merged into the National Potash Corporation, also a Nebraska corporation; that the defendants therein had conspired and confederated together for the purpose of defrauding the public by means of a stock-selling scheme, and in furtherance of such conspiracy had committed certain illegal acts. The relief asked was judgment for the amount paid by Lohr and his assignors for the stock of the various corporations, and the canceling of the certificates of stock, which were tendered in court. A trial was had, and the petition dismissed. Lohr appealed, and the judgment was affirmed by this court in *Lohr v. Faber*, 194 Iowa 402, where a full statement of the issues and facts will be found.

It is admitted that the shares of stock for which the note in suit was given were included in that for which Lohr claimed, and that the amount which appellee had agreed to pay therefor was included in the amount for which judgment was asked by Lohr. It is clear that, by assigning his claim for the purpose of bringing the former action, appellee was put in privity with Lohr in relation to that action, and is bound by the former decree to the same extent as if he had been a party to it. *Garretson v. Ferrall*, 92 Iowa 728. The former judgment was conclusive as to every question actually at issue and decided, and as to all questions within the issues which might have been presented and decided. *Beh v. Bay*, 127 Iowa 246; *Oswalt v. Cronk*, 195 Iowa 230. It was not conclusive as to matters not in issue, unless they were incident to or essentially connected with the subject-matter of the prior adjudication. *Donahue v. McCosh*, 81 Iowa 296; *Heins v. Wicke*, 102 Iowa 396; *Merrill v. Tobin*, 82 Iowa 529.

The issue in the action prosecuted by Lohr was the right of the stockholders of the National Potash Corporation to recover the amounts paid for the stock, as against the promoters and officers, on account of their alleged fraudulent and illegal promotion and management of the corporation. The instant action involves, primarily, the right of a purchaser of such stock to recover from the seller, a holder of stock, for fraudulent representations as to the character and value of the stock sold, and, in the present situation, his right to defend on that ground against a note given for the purchase price as against the seller; or, what is the same thing, against one who is not a holder of the note in due course. Liability in both cases is, it is true, predicated on fraud; but the causes of action are not the same. In one case, the cause of action is the fraud of officers and promoters of the corporation in issuing and marketing the corporate stock. In the other, it is the fraud of an individual owner of stock in falsely representing its value and character to a purchaser. The fact that the seller of stock not belonging to the corporation, or the holder of the note, was also an officer of the corporation against which the claim in the first case had been asserted, had no relation to the fraud relied upon here, except as it bore upon his knowledge of the fraudulent character of the representations.

Lohr, as assignee of appellee, might have had a right to recover against the officers and promoters of the corporation for a fraudulent original issuing of the stock, and yet the appellee have had no defense to a note given by him for stock sold to him by an individual holder. And, conversely, it is plain, there might have been no right to recover against the officers and promoters for a fraudulent issuance of stock, and appellee, nevertheless, have had a good defense against a note given to an individual selling him stock so issued, if his purchase was induced by fraud of the seller. Fraudulent representations by the individual seller of the stock in question, whether it was Rutger or appellant, were not in issue in the former case, and it was not adjudicated in that action that no fraudulent representations were made by the seller to induce the sale. All that was there in issue or there decided, was that the officers and promoters of

the corporation were not liable for fraud in their manner of organizing and managing the corporation, and in the original issuance of the stock.

Moreover, the estoppel arising from a prior adjudication must be mutual. *McDonald & Co. v. Gregory,* 41 Iowa 513; *Goodnow v. Litchfield,* 63 Iowa 275; *Woodward v. Jackson,* 85 Iowa 432. Had the plaintiff in the prior action been successful, it could not have been contended that thereby it was determined that Rutger had procured the note in question by the false and fraudulent representations alleged here; and, on the other hand, we are of the opinion that the failure to recover in the former action against the officers of the corporations was not conclusive that appellee was not induced to buy the stock and give the note in question by false and fraudulent representations on the part of Rutger.

The case of *Iowa State Bank v. Frankle,* 197 Iowa 1177, cited by appellant, is not in point. There the purchaser had commenced an action to recover from the seller for fraudulent representations in the sale of stock. He had settled and compromised that action. When he pleaded the same fraud in defense of the note given for the stock, it was held that he had secured one redress for the wrong done him, and could not again recover by defending on the same ground against the holder of the note. Had Lohr recovered for appellee the consideration he had agreed to pay for the stock, the latter would doubtless have been held to have waived any defense to the note; but that is not the situation here, where we are asked to hold that the determination that he had no right to recover against the promoters of the corporation is an adjudication of his claim of fraud on the part of the individual selling particular stock.

There was no error in sustaining the objection to the offer of the pleadings and decree in the prior action.

The judgment is—*Affirmed.*

ARTHUR, C. J., and EVANS and STEVENS, JJ., concur.