Strafford,
No. 4649.

PETER T. LAMPESIS & a.

*v.*

TRAVELERS INSURANCE COMPANY.

Argued May 7, 1958.

Decided June 20, 1958.

*Fisher, Parsons & Moran* (*Mr. Moran* orally), for the plaintiffs.

*Sheehan, Phinney, Bass, Green & Bergevin* and *Richard A. Morse* (*Mr. Morse* orally), for the defendant.

DUNCAN, J. The law is well settled that the plaintiffs, as purchasers under an executory contract for the sale of real estate, acquired an insurable interest in the school building sold by the city. *Clark* v. *Insurance Co.*, 87 N. H. 353. See also, *Fadden* v. *Insurance Co.*, 77 N. H. 392; *Hoyt* v. *Insurance Co.*, 92 N. H. 242; Harnett-Thornton, Insurable Interest in Property, 48 Col. L. R. 1162, 1167. The terms of the contract were fixed by the notice of the sale at auction, a method of sale required by the provisions of the charter of the vendor city. Laws 1949, *c.* 430, *s.* 59b. It was not disputed that the terms were that a deposit of twenty-five per cent of the purchase price should be made at the time of the sale, and that the balance should be "due and payable upon delivery of quitclaim deed from the said City." The price was fixed by the plaintiffs' successful bid of $10,000, and a deposit of $2,500 was duly made. As purchasers the plaintiffs acquired an insurable

interest in the building, the destruction of which would at the least deprive them of the benefit of their bargain. 1 Richards, Insurance 583.

In support of its motions for nonsuit and directed verdict the defendant maintains that under the law of this jurisdiction the plaintiffs could not be found to have suffered any loss, because ownership of the premises was in the city when the hurricane occurred on August 31, 1954, and the plaintiffs were entitled thereafter to rescind the contract and recover their down payment, thus avoiding the loss for which they now seek to recover.

For nearly a century it has been the recognized law of this jurisdiction that in the absence of a different agreement by the parties, the risk of loss under an executory contract for the sale of real estate falls upon the vendor. *Wilson* v. *Clark,* 60 N. H. 352. See III American Law of Property, *ss.* 11.30, 11.31; Simpson, Equitable Conversion, 44 Yale L. J. 754, 755, 756. Although the rule is otherwise in many other jurisdictions, either by decision or by statute (see 1 Richards, Insurance, *s.* 154; 9C U. L. A. 314) no legislative change has been made here. *Cf.* RSA 346:22. Our law is equally plain that after a loss has occurred, the purchaser may still insist upon execution of the contract by paying the full amount of the purchase price. *Hallett* v. *Parker,* 68 N. H. 598. See annos. 27 A. L. R. (2d) 444, 457; 11 A. L. R. (2d) 390,435; Restatement, Contracts, *s.* 460(2). "But if the plaintiffs . . . pay all they agreed to pay [the defendant] — the loss falls on them and not on the defendant." *Hallett* v. *Parker, supra,* 599.

The rights of the parties to this action became fixed at the time of the loss. *Prince* v. *Insurance Co.,* 86 N. H. 160. The contract of insurance between the plaintiffs and the defendant was one of indemnity only (*Currier* v. *Insurance Co.,* 98 N. H. 366, 369) and unless the plaintiffs suffered a loss within the meaning of the policy the defendant cannot be found liable. *Prince* v. *Insurance Co., supra.*

The defendant's motions for nonsuit and directed verdict were properly denied. There was evidence from which it could reasonably have been found that the insured premises had been conveyed to the plaintiffs before the loss occurred. The city clerk testified positively that the quitclaim deed of the city was "drawn and ready for delivery right after the auction sale" on July 24, 1954. While he did not recall the date, he testified that the deed was delivered to the attorney for the plaintiffs "soon after," and that "certainly

before August 31, 1954 . . . the quitclaim deed was delivered [to counsel] on behalf of the doctors." While other evidence tended to show that delivery of the deed was not made until after September 23, 1954, this evidence was not conclusive, and went merely to the weight of the witness' testimony.

We are further of the opinion that proof that the plaintiffs had legal title was not essential to their right to recover. As previously stated, they were entitled to a conveyance upon payment of the purchase price, even if the buildings had previously been damaged. *Hallett* v. *Parker,* 68 N. H. 598, *supra.* When the damage occurred, the value of their right to specific performance was necessarily diminished. This was clearly a loss to them. In our opinion it was also a "direct loss by windstorm" within the meaning of the extended coverage endorsement. It contrasted with an indirect loss, such as one resulting from consequential deprivation of use or occupancy of the building or of the income from such use, which might be insured against through other types of endorsements referred to in the endorsement issued in this case. There was no evidence that the portions of the building damaged by the hurricane were not essential to the use which the plaintiffs proposed to make of the building. Thus the extent of their loss, in terms of the decreased value of their right to specific performance was measurable by the damage to the structure, just as it was if they in fact became the legal owners before the loss.

The defendant has further argued in support of its motions that the plaintiffs are barred by their failure to seasonably give a notice of their loss to an agent of the company, as required by RSA 407:9, which was a part of the policy of insurance. Although the defendant's claim agent denied that any notice of loss was received by his office before April, 1955, there was evidence that notice was given to the defendant's soliciting agent at Dover between August 31 and September 11, 1954, when a second hurricane occurred; and that a notice in writing was then prepared by the agent and signed by one of the insureds. Thus it was for the jury to say whether there had been compliance with the statute and the issue was properly submitted to the jury. See *Tomuschat* v. *Insurance Co.,* 77 N. H. 388.

The defendant has further contended that under the terms of the policy the plaintiffs are precluded from recovery because they elected to carry out the contract after the loss, and by thus assuming the loss increased the risk in violation of the policy. The

provision of the policy relied upon provides as follows: " . . . This Policy shall be VOID and INOPERATIVE during the existence or continuation of the acts or conditions of things stipulated against, as follows: If without [the] assent [of the company in writing], the . . . circumstances affecting the risk shall . . . be so altered as to cause an increase of such risk . . . . "

In our judgment this provision cannot affect the plaintiffs' right of recovery. Performance of the contract by the plaintiffs after the loss had occurred could not operate to increase the "risk" of the loss. If title to the building had already passed to the plaintiffs, the loss was clearly that which the parties intended the policy to insure against during the major portion of its three-year term. If title had not passed, then the risk was the same risk which existed when the insurance was placed in effect: the risk that the value of the building which the plaintiffs were entitled to acquire would be diminished owing to direct loss by windstorm. In either case the loss to the plaintiffs, and hence the risk of loss insured against, was the same, and no alteration in circumstances operated to "increase" that risk. The circumstance that the loss to the plaintiffs could have been but was not substantially avoided by their election to rescind the contract cannot inure to the benefit of the insurer, or be converted into an alteration of circumstances increasing the risk, and so suspending the insurance. *Golding-Keene Co.* v. *Insurance Company*, 96 N. H. 64, 68.

Relying upon the general proposition that an insured may not recover under a policy of insurance any sum in excess of the value of his interest (anno. 68 A. L. R. 1344; 4 Appleman, Insurance Law and Practice, 57, 58), the defendant argues that if it was not entitled to a nonsuit, it was at least entitled to an instruction in accordance with its fourth request for instructions that the plaintiffs' recovery must be limited to the amount of the down payment of $2,500.

Because of principles already stated the request was properly denied. The plaintiffs' loss was not to be measured by the amount which they chanced to have paid before the loss occurred. Their obligation to pay the full price in order to obtain a conveyance remained the same, whether the loss occurred or not. Payment of a fourth of the purchase price did not make them owners of a one-quarter interest in the property. The purchase and sales agreement did not contemplate that they should become part owners with the city. Their right to a conveyance, and the loss which they

suffered by reason of the windstorm was the same regardless of the amount of their down payment.

The defendant's final argument is that a new trial should be ordered because the verdict was excessive, and produced by inflammatory remarks and prejudicial argument by plaintiffs' counsel.

By the terms of the policy of insurance the plaintiffs' loss or damage was to be "estimated according to the actual value of the insured property at the time . . . except on buildings"; and since the building was "partially destroyed [they were] entitled to [their] actual damages, not exceeding the sum insured." RSA 407:8. See *Fadden* v. *Insurance Co.*, 77 N. H. 392, *supra*. The plaintiffs offered evidence of the estimated cost of replacing or repairing floors, a chimney, ceilings and a roof, aggregating $4,903.50. The defendant's evidence was that the actual value, at the time of the loss, of things so replaced was fifty per cent of the cost of replacement. Its evidence tended to prove that the total damage was $2,500.

The jury was instructed that if replacements would increase the value of the building over what it was at the time of the loss, such increase in value should be deducted from the cost of the replacements. As previously stated, the verdict returned was $4,675.

In arguing that the verdict was excessive the defendant contends that it included a figure of $250 estimated cost of repairing metal ceilings pulled loose by the winds and that this evidence was excluded. The record indicates that certain testimony concerning the cost of painting the ceilings was excluded, but the defendant's motion to withdraw the other evidence concerning the ceilings was denied. The verdict returned cannot be held excessive as a matter of law, either by the standards which were placed before the jury without exception, or under the terms of the policy issued by the defendant.

Nor is there reason to conclude that the verdict was the product of prejudice aroused by the remarks of plaintiffs' counsel, or by a portion of his argument to the jury, to which objection was made. In his opening statement, counsel for the plaintiff was interrupted by objection in stating that the defendant's local agent would probably testify "that he still can't understand why his company . . . "; the intended conclusion of the statement being: "did not pay the loss." The defendant's motion for a mistrial was denied and the jury was instructed to disregard the statement. Later in the course of his opening, in answer to objection by opposing counsel

to the relevancy of evidence which he indicated he would offer, counsel for the plaintiffs commented that he had "never been able to find out what their defense is." A second motion for mistrial was then denied subject to exception.

In the course of cross-examination of the local agent, counsel for the defendant elicited testimony that the agent was authorized to sell the insurance, and put the question: "And you had no authority . . . to make any other agreements or to vary the terms of the written contract . . . isn't that so"? Counsel for the plaintiffs then in redirect examination asked: "How do you feel about the Travellers Insurance Company now when their attorney . . . comes in here and by asking you those questions make you out as just a stooge for them"? The question was excluded, the defendant moved for mistrial, counsel withdrew the question, and subject to exception the jury was told to "pay no attention" to it, and not to "consider it at all."

Finally, in closing argument, over objection and subject to exception, counsel for the plaintiffs urged the jury to "show" the defendant "and every other insurance company that takes money from citizens of this county to insure a risk, that if the risk is incurred, and if they are liable for it, they are not going to save money by dragging the case out and making you go to court . . . . " This argument was permitted to stand, subject to exception, and the substance of it was repeated in concluding the argument. Counsel then in chambers offered to withdraw the argument, again before the jury, repeated his withdrawal, and asked the Court to instruct the jury to disregard the argument, which was done. To identify what was stricken, a portion of the argument was read to the jury before the instruction was given, and to this reading the defendant also excepted.

Following the verdict, the defendant's motion to set aside the verdict, because among other reasons the jury was "moved by passion and prejudice," was denied subject to exception, which implied a finding that the trial was fair. *LePage* v. *Company*, 97 N. H. 46, 53.

While we do not approve of the type of argument and examination of witnesses to which exceptions were taken, we cannot say as a matter of law that the Trial Court erred in finding the trial fair. As has been stated, the verdict was warranted by the evidence; and in the light of the record, a finding that prejudicial error remained uncured was not required as a matter of law.

*Tuttle* v. *Dodge,* 80 N. H. 304, 313; *Baker* v. *Salvation Army,* 91 N. H. 1, 4.

*Judgment on the verdict.*

KENISON, C. J., dissented; the others concurred.