458 P.2d 873

TIME FINANCE CORPORATION,
Plaintiff and Respondent,

v.

JOHNSON TRUCKING CO., Inc., et al.,
Defendants and Respondents.

OCCIDENTAL FIRE AND CASUALTY
COMPANY, Cross-Claimant
and Appellant,

v.

JOHNSON TRUCKING COMPANY, Inc.,
William D. Maxwell and Karen Maxwell,
husband and wife, Cross-Defendants and
Respondents.

OCCIDENTAL FIRE AND CASUALTY
COMPANY, Third-Party Plain-
tiff and Appellant,

v.

MANG COMPANY and George P. Mang,
Third-Party Defendants and
Respondents.

No. 11404.

Supreme Court of Utah.

Sept. 17, 1969.

Wendell E. Bennett, of Strong & Hanni, Salt Lake City, for appellant.

Zar E. Hayes, of Pugsley, Hayes, Rampton & Watkiss, Milo S. Marsden, Jr., of Mabey, Bradford & Marsden, Salt Lake City, for respondents.

CALLISTER, Justice:

Plaintiff, Time Finance Corporation, initiated this action to recover the proceeds of an insurance policy covering a collision loss from Occidental Fire and Casualty Company, the insurer. The insured, Johnson Trucking Company, by its President, William D. Maxwell, had assigned all right, title and interest to the proceeds of its insurance claim against its insurer to Time Finance on April 5, 1966, to secure further a promissory note of the same date.

Prior to the execution of the assignment, Maxwell informed Time Finance that he would shortly receive the insurance proceeds from a wrecked truck. Time requested that Maxwell acquire a letter from George P. Mang, an agent of Occidental, stating that Time's name would be put on the checks from Occidental. Maxwell, according to his deposition, went to Mang and stated that he needed a letter in order to borrow money; he claims that he asked Mang for an assignment of the proceeds. Mang wrote a letter to Time Finance stating that adjustment of the claim was pending at the time. He concluded with the statement: "Time Finance Corporation will be shown as Loss Payee on any claim draft." The letter was signed George P. Mang, General Agent. There is nothing in the record to indicate that Time Finance ever notified Occidental of the assignment of the insurance proceeds.

Mang, on April 6, 1966, wrote a letter to the Claims Department of Occidental, in which he stated that it had been brought to his attention that Time Finance also had a lienholder's interest in the equipment involved in the accident and requested that any claim draft issued should also bear Time's name as well.

The Claims Supervisor, H. W. Pierce, of Occidental, responded in a letter to Mang on April 12, 1966, that they had reviewed the file and did not find that Time had an insurable interest and suggested that the policy be endorsed to cover Time, since there was no way of placing them on the draft without the policy being properly endorsed.

On April 14, 1966, Mang wrote a letter to Occidental stating that since they did not have any evidence, except the agent's statement, he suggested that they not endorse Time to the policy. He concluded: "If and when there is a loss draft issued, we can go from there."

Sometime after April 5, 1966, and approximately ten days prior to the receipt of the loss draft, Maxwell signed the proof of loss and settled for the salvage and $9800.

When the check arrived, there were included as payees thereupon, Johnson Trucking, the insured, and Associates Acceptance Corporation, which was endorsed as a loss payee on the insurance policy. Maxwell and a representative of Associates endorsed the check, and, according to Maxwell, he left the check with Richard Mang, an employee of the Mang Company, who informed him that Time Finance would receive the proceeds as indicated in George Mang's letter. Richard Mang deposited the check in the Mang Company's bank account; the company became insolvent, and Time Finance has never received any money from the insurance proceeds.

The trial court granted Time Finance's motion for summary judgment and ordered Occidental to pay Time Finance $4000 and the clerk of the court $6927.[1]

On appeal, Occidental contends that any liability it may have to Time Finance must be determined by its insurance contract with Johnson Trucking, the insured, and Associates Acceptance Corporation, the loss payee, i. e., the terms of the contract are binding on the parties and on anyone desiring to make a claim thereunder. Occidental cites a condition of the insurance contract which provides that an assignment of interest under the policy shall not bind the company until its consent is endorsed thereon. Another condition states that notice to or knowledge possessed by any agent shall not effect a waiver or a change in any part of the policy or estop the company from asserting any right under the terms of the policy; nor shall the terms of the policy be waived or changed, except by endorsement issued to form a part of the policy, signed by the secertary.

Appellant argues that Time Finance has no legal basis to claim a benefit under the policy, since it has never complied with the terms thereunder; the insured never submitted the proper forms to effect a change in the policy to show Time as a loss payee.

1. In addition to the assignment, Maxwell and his wife had executed a mortgage to Time Finance, which the court had ordered foreclosed; the $4000 represented the amount of the deficiency after foreclosure. Since there were other inferior mortgages, the court ordered the remaining funds be paid into the court to be distributed in such manner as the court may determine

\* \* \* the great weight of authority supports the rule that general stipulations in policies prohibiting assignments thereof except with the consent of the insurer apply to assignments before loss only, and do not prevent an assignment after loss, for the obvious reason that the clause by its own terms ordinarily prohibits merely the assignment of the policy as distinguished from a claim arising thereunder, and the assignment before loss involves a transfer of a contractual relationship while the assignment after loss is the transfer of a right to a money claim.[2]

In the instant action, since the property insured under the policy had previously been destroyed, the right to the proceeds was a chose in action, which could be assigned as any other chose in action, and any clause or condition in the policy restricting assignment could not limit the right of assignment after the loss had occurred.[3]

Appellant argues extensively about the scope of authority of agent Mang, and whether his acts bound Occidental in dealing with Maxwell and Time Finance. The essential issue is whether Occidental received notice of the assignment of proceeds. When an obligee has acquired the right to receive money, it is his prerogative to assign it to whomsoever he selects; it is not essential that the debtor agree to the arrangement. When the obligor receives proper notice of the assignment, he must honor it.[4]

If agent Mang received notice of the assignment of the proceeds, then Occidental, the principal, received notification and was bound to honor it.

A notification by or to a third person to or by an agent is not prevented from being notice to or by the principal because of the fact that the agent, when receiving or giving the notification, is acting adversely to the principal, unless the third person has notice of the agent's adverse purposes.[5]

From the evidence in the record presently before this court, there emerges a definite dispute of material fact concerning the issue of whether there was a *proper notice* of an assignment of the proceeds.

The letter from Mang to Time Finance appears to acknowledge their status as a loss payee. Mang's letter to Occidental indicates that he had recently received information that Time Finance claimed a lienholder's interest in the wrecked equipment. These facts are not indicative of a notice of an *assignment* of the *proceeds* but rather of

2. 16 Couch on Insurance 2d, § 6340, pp. 682–684.
3. 5 Appleman Insurance Law and Practice, § 3458, p. 637.
4. Cooper v. Holder, 21 Utah 2d 40, 440 P.2d 15 (1968).
5. Restatement of the Law, 2d, Agency, § 271, p. 589.

a claim of a lienholder, whom the insured may designate as a loss payee by an endorsement in accordance with the conditions of the policy.

Maxwell, an interested party, on the other hand, claims that he asked Mang for an assignment of the proceeds. This statement in itself creates an issue of fact as to whether this expression would impart to a reasonable person notice by the assignor of his assignment to Time Finance.

Maxwell contacted Mang for the purpose of procuring a letter to Time Finance prior to the loan transaction; Time Finance, after the execution of the assignment by Maxwell, did not give notice to either Mang or Occidental.

A notice of intended assignment is not notice of a subsequent assignment. * *

* * * but an assignee, in order to protect himself, cannot remain silent. * * * But in order to protect his rights, the assignee must notify the debtor of the assignment, since the latter is entitled to all setoffs and defenses he may have or may acquire against the assignor, until he is notified of the assignment. * *[6]

There are certain factual similarities between the instant action and Van Dyke's Food Store v. Independent Coal & Coke Co.,[7] wherein one Hardy had a contract with the coal company to supply ties. Each

time he delivered ties, he received a receipt from the agent of the coal company, upon which Hardy requested that the agent write "to the credit of the Van Dykes Food Stores." Hardy assigned these receipts to the food store as an inducement for it to extend credit for supplies. The issue was whether the coal company had notice of the assignment; this court stated:

* * * Moreover, so far as appears, defendant was never notified that plaintiff claimed it held an assignment from Hardy until after Hardy had been paid in full for the ties. It is elementary that, in the absence of such notice, defendant is not liable to plaintiff. Both Mr. Young and Mr. Hardy testified that the words "to the credit of the Van Dykes Food Stores" was written on the receipts at the request of Hardy merely for the purpose of showing plaintiff that Hardy was delivering mine ties to defendant, that nothing was said to Young about an assignment having been made or that an assignment would be made to plaintiff of the money to be paid for the ties. * * *

In 3 Williston on Contracts (3d ed.), § 437, What amounts to Notice, pp. 249–253, the following relevant observations are made:

Even though there is no actual knowledge of an assignment, if there is knowledge of such facts as would put a reason-

6. C.I.T. Corp. v. Glennan, 137 Cal.App. 636, 31 P.2d 430, 431 (1934).

7. 84 Utah 95, 103, 34 P.2d 706 (1934).

able man upon inquiry, and as would indicate heedless disregard of others' rights if no attention were paid to them, the effect is the same as if actual notice had been given.

"As to what inquiry must be made to satisfy the requirement of the law in this respect must be determined from the circumstances in each individual case."

However, the courts have demonstrated a certain reluctance in applying the doctrine of "prudent and efficient inquiry."

Moreover, the doctrine of presumptive or imputed notice is a harsh doctrine and is only resorted to out of necessity and then with reluctance. Generally, its application results from bad faith, fraud or gross negligence on the part of the one charged, and only then invoked because it would be unconscionable to permit the defendant to assert that he had no knowledge."

\*　　\*　　\*　　\*　　\*　　\*

A distinction which is not without force between the position of the debtor and that of an assignee has been thus stated:

"The fact, however, of such substitution of a new creditor must, in order to make the debtor liable to the assignee, be brought home to the debtor with much exactness and certainty before he has paid the debt. The rule of notice to him is much more stringent than that which may defeat the title of a purchaser of a chose in action or of real estate. The

latter is free to purchase or refuse to purchase as he chooses, and therefore it is his duty, before acting, to trace out any reasonable doubt and to inform himself of the true facts as soon as anything arises to put him on inquiry. But the debtor is not so situated. He must pay to his original creditor when the debt is due, unless he can establish affirmatively that someone else has a better right. The notice to him, therefore, must be of so exact and specific a character as to convince him that he is no longer liable to such original creditor, and to place in his hands the means of defense against him, or at least the information necessary to interplead the assignee."

Additional factors which also merit consideration by the trier of fact in its determination of whether Occidental had notice of the assignment are the subsequent conduct of Maxwell, the assignor, after he procured the letter from Mang, since Maxwell alone gave the alleged notice of assignment and the position of the loss payee, Associates, on the insurance contract. As to the former, Maxwell's conduct of treating the claim as his property right has evidentiary significance in regard to his alleged notice to Mang of the assignment.

It is of the essence of an assignment that the parties agree that the assignee shall immediately be the owner of the claim assigned, and shall have power to

collect it without further action on the part of the assignor. * * *[8]

As to the latter, Associates Acceptance was the loss payee on the insurance contract; the knowledge of the existence of a third party, who was entitled to receive the proceeds under the contract and who had not consented to a release of its claim, may have affected Mang's interpretation of the information which Maxwell claims constituted his notice of assignment.

* * * Of course, where a policy is expressly made payable to a third person, the insured could not, after loss, assign his claim without the payee's consent so as to defeat the rights of such payee under the policy.[9]

■ From the foregoing, there is revealed a factual dispute, namely, did Occidental receive, through its agent Mang, notice, of an assignment of the proceeds or merely information that there was an additional lienholder on the wrecked equipment, whose only claim to share in the proceeds would be through a proper endorsement by the insured in accordance with the provisions of the insurance contract.

■ Finally, appellant, Occidental, contends that the trial court erred by ordering the money in excess of the $4000 required to satisfy the deficiency judgment of Time Finance paid in to the clerk of the court. With this contention we must agree.

The assignment recites that it was made to secure further a promissory note executed by the parties of the same date. Since the assignment was made merely to secure the assignor's indebtedness to the assignee, defendant, Occidental, has a potential liability that is limited strictly to the amount of the unsatisfied claim of the assignee. There is no legal basis to hold Occidental liable to any third person who is a stranger to the assignment.

This case is reversed and remanded to the trial court for disposition in accordance with this opinion. No costs awarded.

CROCKETT, C. J., and TUCKETT, HENRIOD and ELLETT, JJ., concur.

8. 3 Williston on Contracts (3d ed.), § 428, p. 159.

9. 5 Appleman Insurance Law and Practice, § 3459, p. 641.