Olive B. **KINTZEL**, Plaintiff,

v.

**WHEATLAND MUTUAL INSURANCE ASSOCIATION**, Appellee,

and

**Darrel D. Hicks and Marlene K. Hicks,** Appellants.

No. 55033.

Supreme Court of Iowa.

Jan. 17, 1973.

Norton & Freese, Lowden, for appellants.

Tomasek & Vogel, Grinnell, and Casterline & Hamiel, Tipton, for appellee.

REYNOLDSON, Justice.

This is a law action on an insurance policy, seeking recovery for windstorm damage in the amount of $9457. After trial to court on stipulated facts, judgment was entered for defendant insurance company and against both plaintiff, Olive B. Kintzel, and intervenors, Darrel D. Hicks and Marlene K. Hicks. Plaintiff did not appeal, and the trial court's judgment is final as to her. This appeal concerns only the rights of the intervenors (hereafter called Hicks). We reverse the trial court, and remand.

In 1962, John Proesch, Jr. and his wife (hereafter called Proesch) sold the real estate here involved to Olive B. Kintzel under a contract which obligated her to keep the buildings and improvements insured against various risks, including windstorm.

The contract required Kintzel to maintain adequate insurance at her own expense and stipulated that, if loss occurred, " * * * the insurance proceeds may be used under the supervision of [Proesch] to replace or repair the loss if the proceeds be adequate; but in any event such funds

shall stand as security for the payment of the sums [due under the contract]."

Kintzel discharged this contractual duty by purchasing the insurance policy from defendant. It named Olive B. Kintzel as the insured and designated her as a contract purchaser. In the space reserved for listing mortgage interests in the property, the word "mortgagee" was stricken out and this appeared: "John Proesch, Jr., Owner."

On April 6, 1965, while her contract with Proesch still had an unpaid balance of $17,000, Mrs. Kintzel entered into a contract for the sale of the real estate to Hicks. This contract, too, contained an insurance clause, obligating Hicks to maintain insurance on the buildings and improvements as security for the amount due Kintzel. Hicks had not yet complied with this condition when, five days later, the buildings were damaged in the amount of $9457 by a severe windstorm. Hicks has a pending lawsuit against Kintzel, claiming an oral promise by the latter to continue the existing insurance until Hicks procured his own. That litigation, by stipulation, was deferred pending outcome of this case, and does not concern us here.

Nor are we concerned with the circumstances of the second contract sale from Kintzel to Hicks. A determination of the issues presented by this appeal must be reached solely from the provisions of the Proesch-Kintzel contract and the insurance policy issued by the defendant company to Kintzel.

Following the windstorm damage, Kintzel filed a timely proof of loss. After defendant denied liability, Kintzel started this action to compel payment under the policy provisions.

Defendant's answer alleged Kintzel's interest at time of loss was that of a creditor because of her later contract sale of the property to Hicks. The answer further alleged the contract was not in default and the security substantially exceeded the un-paid balance due under its terms. From these facts defendant asserted Kintzel could show no "direct loss"—a term we shall examine later—and therefore she was not entitled to payment under the policy.

The Kintzel action was filed April 7, 1966. Defendant's answer was filed February 3, 1967. On February 23, 1967, Proesch conveyed the real estate to Hicks and assigned to him all interest in the Proesch-Kintzel contract of April 14, 1962, together with " * * * all causes of action that accrue or have accrued concerning said agreement [the land contract] and land above described * * *."

On March 14, 1968, Hicks intervened in Kintzel's pending action against defendant. The petition of intervention asserted Hicks as Proesch's assignee was entitled to the insurance proceeds, to be credited on the balance due under the Proesch-Kintzel contract.

Summarizing the position of the parties as this cause proceeded to trial, Kintzel asserted a right to recover as the named insured in the policy. Hicks claimed he was entitled to payment as Proesch's assignee. Defendant insisted neither Kintzel nor Proesch, upon whose rights Hicks' claim depends, could show any "direct loss" resulting from the windstorm, since both simply held title as security under their respective installment contracts and in each instance the remaining security was more than the indebtedness.

The trial court denied recovery to both Kintzel and Hicks, adopting defendant's theory that neither had sustained a "direct loss" as required by the policy. We quote briefly from the trial court's conclusions:

"Plaintiff's petition should be dismissed by this Court for the reason that Insurance Policy No. 11347 issued by Defendant Wheatland Mutual Insurance Association was an indemnifying agreement protecting Plaintiff, Olive B. Kintzel, against any direct loss suffered by her under coverage of said policy and she

suffered no such pecuniary and compensable loss * * *. By the same token, similar issues are raised in the petition of intervention filed by Intervenors Darrel D. Hicks and Marlene K. Hicks praying for judgment against the Defendant Insurance Association and said petition of intervention should also be dismissed * * *."

The trial court leaned heavily on our early case of Davidson v. Hawkeye Ins. Co., 71 Iowa 532, 32 N.W. 514 (1887) as authority for this conclusion. See also McWilliams v. Farm and City Mutual Insurance Ass'n, 248 Iowa 233, 80 N.W.2d 320 (1957); 45 C.J.S. Insurance § 915(a), pp. 1009–1010; 44 C.J.S. Insurance § 224, at pp. 933–934.

We need not pursue the question as far as it concerns Kintzel, who did not appeal and as to whom the trial court's judgment is both final and binding.

This bring us to the only real issue before us—can Hicks recover as assignee of Proesch under the policy of insurance issued to Kintzel? Before discussing this matter, we reiterate this is a law action reviewable on assigned errors only. We of course limit our holding to the specific issues raised by the appealing litigants.

■ Hicks assigned three errors, two of which deal with alleged error in the trial court's denial of Kintzel's claim. These claimed errors may not be relied on by Hicks, and since Kintzel has not appealed, we disregard them.

The remaining assignment asserts error in finding Hicks could not recover as Proesch's assignee. This is the ground upon which Hicks must prevail, if he is to prevail at all.

I. First to be explored is the status and right of Proesch. If he was without remedy in these circumstances, he had nothing to assign to Hicks.

■ We refuse to adopt defendant's argument that Proesch could not in any

event show a right under the policy. The designation of Proesch as owner and Kintzel as contract purchaser created the same relationship as if Proesch had been called mortgagee. We have several times said as much. Hatch v. Commerce Ins. Co., 216 Iowa 860, 249 N.W. 164, supplemented, 249 N.W. 824 (1933); Davidson v. Hawkeye Ins. Co., 71 Iowa 532, 32 N.W. 514 (1887). Cf. In re Bernhard's Estate, 134 Iowa 603, 112 N.W. 86 (1907). It is also apparent defendant intended such result. Otherwise we see no reason for naming Proesch at all. See 5 Couch on Insurance 2d §§ 29:67–:68, 29:103–:104, pp. 352–54, 338–90 (1960).

We therefore hold Proesch's status was the same as if he had been named as mortgagee in the policy. We further hold the policy terms afforded him an independent right to sue by including these terms as part of the contract of insurance:

> "Loss or damage, if any, under this policy, shall be payable to the mortgagee (or trustee) [Proesch], named in this policy, as [his] interest may appear, and this insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner [Kintzel] * * *."

What was the "interest" of Proesch referred to in the policy? As in almost all cases, it is not defined in that instrument. The extent and nature of that interest, of course, may be determined only under the terms of the sales contract.

Turning to the contract, the interest of Proesch is measured by the unpaid purchase price, reinforced by the buyer's obligation to keep the premises insured for the seller's benefit for not less than the unpaid balance of purchase price, "for the further security for payment of the sums herein mentioned."

■ Irrespective of the policy terms, our rule that a mortgagee, by a covenant or condition in the mortgage, may acquire

an interest in a policy of insurance issued to the mortgagor, is applicable here by analogy.

We have held where a mortgagor covenants to maintain insurance for the benefit of the mortgagee, a policy of insurance held by him will inure to the benefit of the mortgagee as a matter of equitable right, regardless of whether the policy was in express terms payable to the mortgagee or not. Johnson v. Northern Minnesota Land & Investment Co., 168 Iowa 340, 150 N.W. 596 (1915); Heins v. Wicke, 102 Iowa 396, 71 N.W. 345 (1897).

In *Johnson*, supra, we said, 168 Iowa at 344, 150 N.W. at 598:

"[I]t is * * * settled that, where a mortgagor covenants to maintain insurance for the benefit of the mortgagee, then a policy of insurance held by him will inure to the benefit of the mortgagee as a matter of equitable right, regardless of whether the policy was in express terms payable to the mortgagee or not. [Citations.]"

The same rule was articulated in Winneshiek Mutual Insurance Association v. Roach, 257 Iowa 354, 132 N.W.2d 436 (1965); Central Nat. Bank & Trust Co. v. Simmer, 228 Iowa 784, 293 N.W. 460 (1940); and in First Trust Joint Stock Land Bank v. Duroe, 212 Iowa 795, 237 N.W. 319 (1931).

In Bartlett v. Iowa State Ins. Co., 77 Iowa 86, 41 N.W. 579 (1889) the policy contained the provision, "Loss, if any, payable to mortgagees as their interest may appear." We held the mortgagee could maintain an action against the insurance company, the court there stating, "There was no other mortgage upon the property, and she was the real party in interest." This rule was followed in Christenson v. Fidelity Ins. Co., 117 Iowa 77, 90 N.W. 495 (1902), and prevails generally. 55 Am. Jur.2d, Mortgages § 278, pp. 367–68.

In the case *sub judice* the policy contained essentially the same language quoted from *Bartlett*, supra. The sales contract contained the provisions to carry insurance as did the mortgage in Johnson v. Northern Minnesota Land & Investment Co., supra. Clearly, Proesch held an outstanding right with reference to the policy by virtue of the sales contract alone, following the mortgagee analogy to a logical conclusion.

II. We have said Hicks could acquire no rights except as assignee of Proesch. Defendant, challenging the efficacy of this assignment, argues on the one hand the assignment fell short because the policy was not specifically mentioned, and on the other hand that the transfer was a blatant effort to put Hicks in the shoes of Proesch. It is apparent that this was the intent of the assignor and assignee. We perceive no convincing reason why the intent of the contracting parties should not prevail.

We have liberally construed such instruments to carry out the purpose of the parties. In Petty v. Mutual Benefit Life Ins. Co., 235 Iowa 455, 465–466, 15 N.W.2d 613, 618 (1944) this court said:

"No special form of words is necessary to effect in assignment, in the absence of statutory provisions prescribing a particular mode or form. Any language, however informal, if it shows the intention of the owner of the chose in action to transfer it will be sufficient to vest the property to the assignee."

To the same effect, see Briley v. Madrid Improvement Company, 255 Iowa 388, 122 N.W.2d 824 (1963); 6 Am.Jur.2d, Assignments § 82, pp. 263–64; 6 C.J.S. Assignments § 52, pp. 1096–1097.

■ Defendant vigorously contends a policy of insurance is a personal contract not assignable without its consent and Hicks had no right to intervene because it neither contracted with him nor consented he acquire any rights under the policy. A basic flaw in this reasoning results from defendant's failure to recognize that the Proesch-to-Hicks assignment followed the windstorm. After the loss was incurred

the issue became not an assignment of the policy, but the assignment of a chose in action—the right to compel defendant's payment of insurance proceeds in accord with that interest of the owner-vendor recognized in the policy and defined in the contract.

At this point the language found in Davis v. Bremer County Farmers' Mut. Fire Ins. Ass'n, 154 Iowa 326, 331, 134 N.W. 860, 862 (1912) is particularly relevant:

> "The statutory provisions (Code, §§ 3044, 3046) [now §§ 539.1, 539.2, The Code], declaring that all instruments by which the maker promises to pay another, without words of negotiability, a sum of money, are assignable by indorsement thereon, or by other writing, even though by the terms of the instrument its assignment is prohibited, have been applied to sustain a right of action by the assignee of a fire policy who takes an assignment thereof after loss, notwithstanding provisions in the policy against assignment. Walters v. Washington Ins. Co., 1 Iowa, 404, 63 Am.Dec. 451; Mershon v. National Ins. Co., 34 Iowa, 87. Such a conclusion is in accordance with the reason and policy of the statute; for, after the loss has occurred, the obligation of the insurer under the policy is to pay a sum of money, the right to which may properly be transferred, although the amount may not yet be definitely ascertained."

To the same effect, see Time Finance Corporation v. Johnson Trucking Co., 23 Utah 2d 115, 458 P.2d 873 (1969); 5A Appleman, Insurance Law & Practice § 3458, at pp. 406–407 (1970); 16 Couch on Insurance 2d, § 63:40, pp. 682–84 (1966).

The interest and right of Proesch to compel application of insurance proceeds in accordance with the policy and with his sales contract was a chose in action which, in the language of the assignment, "accrued concerning said agreement and the land above described." The policy in question was the subject of specific provisions in the "agreement" (sales contract). The insurance proceeds which are the subject of this litigation resulted from damage to the "land [real estate] above described." To say the chose in action asserted by Hicks was not assigned under the broad language of the Proesch-Hicks assignment is hypertechnical.

 Further pertinent as bearing on the effect of this assignment (and still relying on the mortgagee analogy) is the general rule that an assignment of the note and mortgage carries with it such rights as existed in the assignor with respect to the ancillary insurance policy, without the consent of the insurer. Central Union Bank v. New York Underwriters' Ins. Co., 52 F. 2d 823 (4 Cir. 1931), cert. denied, 290 U.S. 679, 54 S.Ct. 102, 78 L.Ed. 585 (1933); Reinhardt v. Security Ins. Co. of New Haven, Conn., 312 Ill.App. 1, 38 N.E.2d 310 (1941); Andrello v. Nationwide Mutual Fire Ins. Co., 29 A.D.2d 489, 289 N.Y.S.2d 293 (1968); 45 C.J.S. Insurance § 427(b) (1), at p. 50; see Sun Fire Office v. Fraser, 5 Kan.App. 63, 47 P. 327 (1897); Whiting v. Burkhardt, 178 Mass. 535, 60 N.E. 1 (1901); Key v. Continental Ins. Co., 101 Mo.App. 344, 74 S.W. 162 (1903); Breeyear v. Rockingham Farmers' Mut. Fire Ins. Co., 71 N.H. 445, 52 A. 860 (1902).

The above general rule is but one branch of a still broader doctrine summarized in 6 Am.Jur.2d, Assignments § 121, at pp. 302–03:

> "The assignment of a debt ordinarily carries with it all liens and every remedy or security that is incidental to the subject matter of the assignment and that could have been used, or made available, by the assignor as a means of indemnity or payment, even though they are not specifically named in the instrument of assignment, and even though the assignee at the time was ignorant of their existence."

See also 4 Corbin on Contracts, § 891, pp. 580–583 (1951).

■ The rule that the assignment of a mortgage containing a covenant to insure creates a right to insurance proceeds in the assignee has been recognized in this jurisdiction as permitting the assignee a direct cause of action against the insurer.

In Fred Miller Brewing Co. v. Capital Ins. Co., 111 Iowa 590, 82 N.W. 1023 (1900) one Maier owned the property insured, and the loss, if any, was made payable to Fred Miller, mortgagee, as his interest might appear. The mortgage had been assigned to the plaintiff before the fire. It was held the plaintiff assignee might maintain the action, and "* * * even had the insured been joined, under the allegations of the petition, confessed by the default to be true, the judgment must necessarily have been awarded to this plaintiff. Why? Because both had stipulated the loss should be so applied." See also Mahoney v. State Ins. Co., 133 Iowa 570, 110 N.W. 1041 (1907).

■■ Unless a contrary intention is manifest or inferable, an assignment ordinarily carries with it all rights, remedies and benefits which are incidental to the thing assigned. 6 Am.Jur.2d, Assignments § 119, at p. 301; 6 C.J.S. Assignments § 85, at p. 1142 (cited with approval in Fischer v. Klink, 234 Iowa 884, 14 N.W.2d 695 (1944)). Under the mortgagee analogy, therefore, the conceded assignment to Hicks of the Proesch-Kintzel sales contract transferred Proesch's right to the insurance proceeds, even without the other assigning language incorporated in the instrument. In addition, we hold under these circumstances those other assignment provisions were broad enough to include this accrued right of action and move it from Proesch to Hicks.

Holding as we do Hicks acquired by assignment the rights of Proesch, we now confront other issues, both procedural and substantive, advanced by defendant.

■ III. Turning to the procedural aspects, these parties stipulated Hicks might intervene in this action, without prejudice to the rights of any party with respect to the issues thereby generated. This implemented our policy encouraging intervention in litigation in order to determine all rights in one action and avoid multiplicity of suits. Rule 75, Rules of Civil Procedure; Wharff v. Wharff, 244 Iowa 496, 56 N.W.2d 1 (1952). Further, the general rule in Iowa and elsewhere grants an intervenor a right to appeal an adverse judgment whether or not he is joined by one of the original parties. In re Anderson's Estate, 125 Iowa 670, 101 N.W. 510 (1904); 4 Am.Jur.2d, Appeal and Error § 175, at p. 686; 4 C.J.S. Appeal & Error § 186, pp. 572–574.

IV. Defendant asserts Hicks' claim is barred by the 12-month contractual period of limitation. To adopt that position would require us to repudiate well-reasoned case law long established in this state.

An identical situation confronted this court in Stevens v. Citizens' Ins. Co., 69 Iowa 658, 29 N.W. 769 (1886). This court there said, 69 Iowa at 664–665, 29 N.W. at 771–772:

"The policy in suit is a contract between plaintiff and defendant. The provision, however, that the loss or damage on the machinery should be paid to the intervenor as his interest might appear, was for the intervenor's benefit. Section 2544 [now rule 2, R.C.P.] of the Code provides that a party with whom or in whose name a contract is made for the benefit of another may sue in his own name without joining with him the party for whose benefit the suit is prosecuted. Under this provision it is very clear, we think, that plaintiff had the right to prosecute the action in his own name for the recovery of the whole amount of the loss. The court possessed ample power, upon a showing of intervenor's interest, either by plaintiff or defendant, to enter such judgment in the case as would have fully protected the

rights of all the parties. If the presence of intervenor had been deemed necessary to the determination of the controversy, the court had the power, under section 2551, to order him to be brought in. The action instituted by plaintiff was for the recovery of the whole loss; and, as we think, was properly brought in his own name. The intervenor, however, had an interest in the matter of litigation, and he had the right, under section 2683, to become a party to the action. That section provides that 'any person who has an interest in the matter in litigation in the success of either of the parties to the action, or against both, may become a party to an action between other persons, either by joining the plaintiff in claiming what is sought by the petition, or by uniting with the defendant in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the cause, and before the trial commences.'

"It was under this provision that intervenor became a party to the suit. He did not institute a new action, but became simply a party to the one pending between plaintiff and defendant. Nor did he make any demand independent of the matter in litigation between them, but asked only that the recovery for that portion of the loss which, by the terms of the contract sued on, was payable to him, should be for his benefit. The policy provides that no action for the recovery of any claim shall be maintainable, unless commenced within 12 months after the occurrence of the fire. Clearly, we think, this does not preclude the intervenor from becoming a party to an action which was properly brought within that time, and asserting any interest he may have in the subject-matter of the action."

 In the case at bar, Kintzel's action was timely filed. It incorporated the same subject matter: a claim under the policy for windstorm damages. Hicks, under the *Stevens* rule, could intervene to establish his interest after the contractual limitation period had expired.

 V. Nor is Hicks precluded from intervening because neither he nor Proesch filed proof of loss. The policy provision relied on by defendant states, "The insured shall give immediate written notice to this Association of any loss [and] protect the property from further damage * * *." But again equating the vendor's position with that of a mortgagee, the following policy clause actually controls: "If the insured fails to render proof of loss such mortgagee, upon notice, shall render proof of loss in the form herein specified within sixty (60) days thereafter * * *."

Defendant does not contend Kintzel failed to file prompt proof of loss. There is no indication defendant ever gave the contractual notice to Proesch or Hicks to file such proof. This defense is without merit.

VI. Lastly, defendant contends it was obligated to pay no one under the policy because neither of the claimants suffered a "direct loss." The trial court, feeling compelled to follow what it perceived as our holding in Davidson v. Hawkeye Ins. Co., 71 Iowa 532, 32 N.W. 514 (1887), reluctantly adopted defendant's theory. Defendant ingeniously equates the phrase "direct loss" with a current reduction in claimant's net worth, ascertained in a collateral and entirely speculative inquiry.

"Direct loss" is not defined in that way, nor in any other sense, in the policy. It is defined in several adjudicated cases hereafter cited. The insuring clause of the policy states:

"[T]his Association * * * does indemnify the insured named herein * * * to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such

loss * * * nor in any event for more than the interest of the insured, against all DIRECT LOSS BY FIRE, LIGHTNING AND * * *."

By endorsement the policy was extended to include "direct loss by windstorm" and other named casualties. These provisions are part of a standard insurance policy known as the New York type. It was first adopted in New York, thereafter by Iowa and numerous other states. Section 515.138 (Sixth), The Code; Olson Enterprises, Inc. v. Citizens Insurance Co. of N. J., 255 Iowa 141, 121 N.W.2d 510 (1963).

■ "Direct loss" as that phrase appears in the policy, above, does not indicate an immediate impact on the contents of claimant's wallet, as implied by defendant's argument and adopted by trial court. "Direct loss by fire" in a fire insurance policy is generally synonymous with proximate cause. Farmers Mutual Fire Insurance Co. v. McMillan, 217 Tenn. 125, 395 S.W. 2d 798 (1965). The term "direct loss by windstorm" merely means damage due to the strength or force of the wind. Abady v. Hanover Fire Insurance Company, 266 F.2d 362 (4 Cir. 1959); Commercial Carving Co. v. Manhattan Fire & M. Ins. Co., 191 F.Supp. 753 (M.D.N.C.1961); see Lydick v. Insurance Company of North America, 187 Neb. 97, 187 N.W.2d 602 (1971).

In Lampesis v. Travelers Insurance Company, 101 N.H. 323, 143 A.2d 104 (1958) the court had before it a claim brought by contract purchasers. Defendant insurer contended under the law of New Hampshire claimants could have rescinded and thus avoided the loss. The court held at 101 N.H. 327, 143 A.2d 107:

"When the damage occurred, the value of their right to specific performance was necessarily diminished. This was clearly a loss to them. In our opinion it was also a 'direct loss by windstorm' within the meaning of the extended coverage endorsement. It contrasted with an indirect loss, such as one resulting from consequential deprivation of use or occupancy of the building or of the income from such use * * *."

It is apparent the phrase "direct loss" does not have the meaning ascribed to it by defendant, and provides no ready-made solution to the substantive issue in this case.

Our latest exploration of this law area was in Royal Zenith Corporation v. Citizens Publications, Inc., 179 N.W.2d 340 (Iowa 1970), relating to a personal property sales contract. Pertinent here is the rule laid down in that case regarding the intention of the parties, including the insurer, as to who should bear the loss. The court said in 179 N.W.2d at 346:

"In the seller-buyer situation, if the buyer is to obtain insurance at his own expense for the seller's protection, and does so, plainly that insurer is intended to bear the loss as among the three parties."

The issue actually turns on whether we are to apply, in determination of "loss," the New York rule or the Wisconsin rule. The New York rule was formulated in Foley v. Manufacturers' & Builders' Fire Ins. Co., 152 N.Y. 131, 46 N.E. 318 (1897), interpreting the New York type policy adopted in Iowa. This rule, while recognizing a fire insurance policy is an indemnification contract, also recognizes the premiums are computed according to the value of the property and the risk involved without knowledge of collateral remedies, so that recovery will not be denied so long as the insured has a valuable insurable interest at the time of the casualty even though post-casualty events (including consummation of an executory contract) avoid actual pecuniary loss to the insured. A vast majority of jurisdictions in the United States adhere to the New York rule. Edlin v. Security Insurance Co., 269 F.2d 159 (7 Cir. 1959) (applying Illinois law), cert. denied, 361 U.S. 932, 80 S.Ct. 370, 4 L.Ed.2d 354 (1960); Citizens Insurance Company v. Foxbilt, Inc., 226 F.2d 641 (8 Cir. 1955) (applying New York rule in Iowa litigation); Vogel v. Northern Assurance Com-

pany, 219 F.2d 409 (3 Cir. 1955) (applying Pennsylvania law); Milwaukee Mechanics Ins. Co. v. Maples, 37 Ala.App. 74, 66 So. 2d 159 (1953), cert. denied, 259 Ala. 189, 66 So.2d 173 (1953); Hughes v. Potomac Ins. Co. of District of Columbia, 199 Cal. App.2d 239, 18 Cal.Rptr. 650 (1962); Springfield Fire & Marine Ins. Co. v. Boswell, 167 So.2d 780 (Fla.App.1964); Alwood v. Commercial Union Assurance Company, 107 Ga.App. 797, 131 S.E.2d 594 (1963); First Nat. Bank of Highland Park v. Boston Ins. Co., 17 Ill.2d 147, 160 N.E. 2d 802 (1959); New England Gas & E. Ass'n v. Ocean Acc. & Guar. Corp., 330 Mass. 640, 116 N.E.2d 671 (1953); Pink v. Smith, 281 Mich. 107, 274 N.W. 727 (1937); Board of Trustees, etc. v. Cream City Mutual Ins. Co., 255 Minn. 347, 96 N. W.2d 690 (1959); Wolf v. Home Insurance Company, 100 N.J.Super. 27, 241 A.2d 28 (L.Div.1968), aff'd per curiam, 103 N. J.Super. 357, 247 A.2d 345 (App.Div.1968); Koppinger v. Implement Dealers Mutual Ins. Co., 122 N.W.2d 134 (N.D.1963); Meader v. Farmers' Mut. Fire Relief Ass'n, 137 Or. 111, 1 P.2d 138 (1931); Dubin Paper Co. v. Insurance Co. of North America, 361 Pa. 68, 63 A.2d 85 (1949); Home Insurance Company of New York v. Dalis, 206 Va. 71, 141 S.E.2d 721 (1965); Aetna Casualty & Sur. Co. v. Cameron Clay Products, 151 W.Va. 269, 151 S.E.2d 305 (1966).

The Wisconsin rule, followed by few jurisdictions, grew out of Ramsdell v. Insurance Co. of North America, 197 Wis. 136, 221 N.W. 654 (1928). This rule, also recognizing a fire insurance policy as an indemnification contract, avoids the insurer's liability when subsequent collateral events (including consummation of an executory contract) eventually result in shielding the insured from sustaining any actual pecuniary loss from the casualty.

Trial court felt Davidson v. Hawkeye Ins. Co., 71 Iowa 532, 32 N.W. 514 (1887) mandated the result reluctantly reached below. While that decision contained language unnecessarily articulating what is now the Wisconsin rule, it actually turned on an unrelated issue. In *Davidson* the policy provided, "In case any such property shall be sold, conveyed or incumbered * * * without the written consent of this company * * * this policy shall immediately thereafter be *null and void.*" The insured sold the property on contract and the buyer took possession. The Iowa court denied recovery, holding this to be a sale under the terms of the policy-voiding provision. No such clause appears in this defendant's insurance policy. The concern expressed by the dicta in *Davidson,* that the insured would otherwise receive a windfall by obtaining both the contract price and the insurance proceeds, has no application in the instant case, where under the provisions of the sales contract the proceeds stand as security for the purchase price and would of course reduce it by the amount paid.

Absent those contract provisions, the same result would be supported under the rationale of the great majority of cases dealing with an analogous issue. · Where the vendee as equitable owner will bear the loss occasioned by a policy-covered casualty pending completion of the sale, and the contract is silent as to insurance, the rule quite generally followed is that the proceeds of vendor's insurance policies, even though the vendee did not contribute to their maintenance, constitute a trust fund for the benefit of the vendee to be credited on the purchase price, the theory being that the vendor is a trustee of the proceeds for the vendee. Dubin Paper Co. v. Insurance Co. of North America, 361 Pa. 68, 63 A.2d 85 (1949); and cases cited in Annot., 64 A.L.R.2d 1402, 1406–1412, at § 4; see Gard v. Razanskas, 248 Iowa 1333, 85 N. W.2d 612 (1957); Hatch v. Commerce Ins. Co., 216 Iowa 860, 249 N.W. 164, supplemented, 249 N.W. 824 (1933); Brady v. Welsh, 200 Iowa 44, 204 N.W. 235 (1925); Raplee v. Piper, 3 N.Y.2d 179, 164 N.Y.S. 2d 732, 143 N.E.2d 919 (1957); Cribbett, Insurance and the Executory Contract for the Sale of Real Estate, 51 Ill.B.J. 124

(1962); Young, Some "Windfall Coverages" in Property and Liability Insurance, 60 Colum.L.Rev. 1063 (1960).

The "loss" issue must start with the question, precisely when does one measure or ascertain whether a windstorm loss has occurred? Is the loss to be fixed at the time of casualty so that, as long as the insured then has an insurable interest the insurer becomes obligated to pay under its policy, or can subsequent collateral events be taken into account in determining the existence of an insurable "loss"?

This policy provides the obligation of the defendant is limited (with certain exceptions) by "the actual cash value of the property at the time of loss." The insured must " * * * give immediate written notice * * * of any loss [and] protect the property from further damage * * *." The insured must render "proof of loss" within "sixty days after the loss." Obviously, the time of "loss" as that term is used in the policy, refers to the date of casualty. We so held in Olson Enterprises, Inc. v. Citizens Insurance Co. of N. J., 255 Iowa 141, 121 N.W.2d 510 (1963). See also Citizens Insurance Company v. Foxbilt, Inc., 226 F.2d 641 (8 Cir. 1955) (applying Iowa law).

█ It follows the "loss" we are concerned with here should be defined and measured as of the date of the damage-causing windstorm.

As this case is presently postured we first consider the interest and rights of Proesch (assigned to Hicks) on the date of and prior to the windstorm. At that time he could look to the real estate sold as security for the purchase price. In case of casualty loss to the buildings and improvements he had recourse to the insurance proceeds.

Immediately after the windstorm (assuming defendant's claim of non-liability were to be accepted), Proesch's security stood diminished by the amount of the damage to improvements. But defendant argues the security he had left was more than the purchase price balance and therefore Proesch sustained no loss.

█ Defendant's argument is demolished by the logical rationale of the many decisions from states which follow the New York rule, which this court now adopts. The argument of defendant has an insidious fault because it ignores the reality that although the post-casualty security may be valued at more than the debt, it cannot be liquidated to extinguish that obligation, assuming no default in the sales contract. In these situations only time and vicissitudes of the real estate market, during the course of contract payments, ultimately will determine whether the vendor actually sustains an out-of-pocket loss. Defendant in effect postulates this court should assume that payments which may be made by another, years after casualty, will liquidate the vendor's interest. To follow, this rationale would require us to measure the presence or absence of loss, not at the time of the windstorm in accordance with the policy and our adjudicated cases, but at some future unspecified date.

█ Applicable here, by analogy, is the general rule set out in 45 C.J.S. Insurance § 919(b)(2), at p. 1026:

> "The mortgagee's right to recovery under an insurance covering his interest, or payable to him as his interest may appear, is not reduced or lessened by the fact that he has other security for the payment of the mortgage debt remaining after the destruction of the insured property, or by the fact that the property in its damaged condition is more than sufficient to pay the mortgage debt, or by the fact that the mortgagor has restored the insured property to as good a condition as it was in before the loss."

It is common knowledge in this state that many existing and useful farm buildings do not enhance the market value of the farm upon which they are located. It is likewise common knowledge the market

value of some city business area real estate might be undiminished after loss of functional structures still in use. By defendant's logic (that its liability arises only upon an actual reduction in net worth or an immediate out-of-pocket monetary loss to the insureds) destruction of such buildings would not be a compensable "loss" to any person named in the policy.

There is no evidence in the record the premiums paid this defendant were less than the usual rates for the improvements described in the policy, where the whole estate—legal, equitable and real—was insured, with loss to be paid to Kintzel and Proesch as their interests might appear.

Justice and equity do not require this court to permit defendant to avoid the liability plainly assumed by the terms of its policy, nor adopt the strained reasoning that despite the damage to buildings described in the policy, there was no loss.

The diminution in value of the purchase price security on the date of the casualty was sufficient "loss" to create in Proesch a chose in action against defendant for the agreed damages. Cf. Lampesis v. Travelers Insurance Company, 101 N.H. 323, 143 A.2d 104 (1958). That chose in action was assigned to Hicks.

Upon remand judgment should be entered in favor of intervenors against the defendant for $9457, to be applied on the Proesch-Kintzel contract balance, together with interest and costs.

Reversed and remanded.

All Justices concur, except LeGRAND, MASON and RAWLINGS, JJ., who dissent, and REES, J., who takes no part.

LeGRAND, Justice (dissenting).

I dissent from the result reached by the majority and from the non sequitur procedure by which it ultimately decided this $9475.00 prize should belong to Hicks.

In 1962, John Proesch owned the real estate in question, which was successively sold on contract to Olive Kintzel and then, by her, to Hicks. In 1965, the property suffered a windstorm loss in the above amount. Kintzel had insured against this risk with defendant under a policy which named Proesch as "owner," a term the majority correctly equates with the standard mortgagee designation. This is the contract at issue here. Hicks had obligated himself to procure insurance as a condition of his purchase agreement with Kintzel but he had failed to do so at the time the loss occurred.

After defendant denied liability Kintzel brought suit to enforce payment of the loss. Trial resulted in a judgment for defendant, from which Kintzel took no appeal. Proesch made no claim nor did he join in the suit against defendant. At no time, in fact, has Proesch by word or act suggested he had an interest in the policy or its proceeds.

Hicks got into the picture in 1965 when he purchased the property from Kintzel on contract, the instrument in which he agreed (but did not perform) to effect insurance against loss from certain risks, including windstorm. In 1967, (approximately two years after the loss) Proesch conveyed the property to Hicks and assigned to him the original Proesch-Kintzel contract. Another year passed, and on March 14, 1968, Hicks intervened in the then pending suit between Kintzel and defendant—the litigation which ended adversely to Kintzel and from which she did not appeal. The same judgment found against Hicks, too, and the case is here solely on his appeal.

Hicks' right of recovery is based entirely on the 1967 assignment from Proesch. Although it was argued the main purpose of the assignment was to transfer Proesch's interest in the policy proceeds to Hicks, the instrument itself is strangely silent on this vital subject. Nevertheless the majority find the parties so intended. It does so from both a *silent* assignment and a *silent* record on an issue Hicks had the duty to establish.

The case was submitted on stipulated facts. There is no mention of the contention now made—that the assignment of the real estate contract included the right to proceeds from an insurance policy issued to Kintzel. I agree whis would depend on what the parties meant by the language used, as the majority states. What I *don't* agree with is the conclusion that the majority can somehow divine that intention in the absence of any facts to disclose what it was.

I take it there is no doubt this intention could have been shown under the doctrine of Hamilton v. Wosepka, 261 Iowa 299, 154 N.W.2d 164 (1967). Yet neither Proesch nor Hicks—the only parties who could know—testified on the matter. On the other side there is abundant evidence from the language used in the assignment and the conduct of the parties to negate any such intention.

I have already mentioned Proesch's total lack of interest in the loss or its payment; the failure of the assignment to mention the claim; and the delay of more than two years before Hicks asserted any rights at all. This simply is not the conduct of two reasonable persons who are dealing with a claim an insurance company has already rejected and which is at that very moment in litigation. When one adds to this the extra circumstances that Hicks had defaulted on his own obligation to insure the property and Kintzel (the only insured) had failed to appeal from an adverse judgment, the result here is indeed startling.

I have no quarrel with the authorities cited by the majority on the law of assignments. They just don't fit this case, for here there is nothing on which the majority can base its groundless finding that the assignment intended to transfer that which was ignored—ignored, incidentally, not only in the instrument itself but in the record as well. The majority has magically supplied the "evidence" which Hicks failed to produce.

Apparently even the majority is not satisfied with its assignment rationale, as it goes on to say Hicks could recover even without it. One trouble with that is the fact Hicks claims only as Proesch's assignee. I hope I am right in assuming the majority would not rule for Hicks on a theory neither pled nor relied on by him at trial.

I must beg deliverance from joining in such a self-styled "equitable" result and I therefore dissent.

MASON and RAWLINGS, JJ., join in this dissent.